UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KAROUN DAIRIES, INC.,

          Plaintiff,

v.

KAROUN DAIRIES, INC., *et al.*

          Defendants;

AND RELATED COUNTERCLAIM.

Civil No. 08cv1521-L(WVG)

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION, AND (2) DENYING PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIM**

    This trademark infringement action arises from a family dispute over the right to use in the United States a trademark previously established in the family business in Lebanon. Plaintiff was first to use and register the mark in the United States and filed this infringement action against Defendants. Defendants filed a counterclaim alleging that Plaintiff is the infringer and requested cancellation of Plaintiff's registered mark. Plaintiff moved for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) and to dismiss the counterclaim pursuant to Rule 12(b)(6) for lack of trademark standing. For the reasons which follow, Plaintiff's motions are **DENIED**.

    Plaintiff's founder, Anto Baghdassarian and Defendant Ara Baghdassarian are brothers.[1]

---

[1] For ease of reference, the court will refer to these parties throughout as Anto and Ara, respectively. No disrespect is intended by the use of first names.

Anto and Ara both worked for many years in the family dairy business in Lebanon ("Karoun Lebanon").[2] Karoun Dairies is a trade name which has been used in the family business since 1931 and is registered in Lebanon. Karoun Lebanon was well known in the Middle East and exported its products as far as Paris and London. (Answer and Countercl. at 10-11.)[3]

Ara was Karoun Lebanon's financial controller and manager. (Answer and Countercl. at 10.) Anto was a shareholder, director and officer of Karoun Lebanon. In these capacities, he was privy to the company's plans to further expand its business outside Lebanon. (*Id*. at 11.) In approximately 1990, after the death of his father and due to civil unrest in Lebanon, Anto sold his interest in Karoun Lebanon to Ara, and moved to the United States. (*Id*.; Decl. of Andrea M. Kimball in Supp. of Karoun Dairies, Inc.'s Mot. for Prelim. Inj. ("Kimball Decl.") Ex. L at 30; Decl. of John M. Nading in Supp. of Defs/Countercls' Opp'n to Pl./Counterdef.'s Mot. to Dismiss ("Nading Decl.") Ex. B at 5).) While Ara asserts that they entered into an agreement that Anto would not enter the dairy business, Anto disputes this. (*Cf.* Anto PI Decl. at 2 *with* Third Decl. of Ara Baghdassarian in Supp. of Defs/Countercls' Opp'n to Pl./Counterdef's Mot. to Dismiss ("Ara Mot. to Dismiss Decl.") at 1.)

Subsequently, Ara continued to manage Karoun Lebanon, which proceeded to expand its business. Karoun Lebanon participated in local and intentional exhibitions, and advertised in international directories and journals. (Answer and Countercl. at 11.) In 1998 Karoun Lebanon registered the karoun.com and karoundairies.com domain names. (Suppl. Decl. of Andrea M. Kimball in Supp. of Karoun Dairies, Inc.'s Reply in Supp. of Its Mot. for Prelim. Inj. (Suppl. Kimball Decl.") Ex. 3.) It focused its expansion efforts on the United States, Canada, Australia and Europe because these regions were politically stable and had large Lebanese and Armenian communities. Karoun Lebanon registered its mark in Australia and Canada, it attempted registration in the United States, and has a pending Community Trademark application in Europe. (Answer and Countercl. at 11-12.) In 2004 or 2005 Karoun Lebanon had to

---

[2] The family business was established in 1931 as a sole proprietorship known as Laiterie Karoun. In 1972 it was incorporated in Lebanon under the name Karoun Dairies, S.A.L.

[3] The factual allegations from pleadings referenced herein were not disputed.

temporarily suspend production in Lebanon during a military conflict, however, it continued to use the Karoun mark through its exclusive licensees, Defendants Karoun Dairies, Inc., a Canadian corporation ("Karoun Canada") and Karlacti, Inc., a Delaware corporation ("Karlacti"). (*See* Ara Mot. to Dismiss Decl. at 2.)

Anto started a dairy business in California in 1992, incorporated Plaintiff and started selling cheese products. (Decl. of Anto Baghdassarian in Supp. of Karoun Dairies, Inc.'s Mot. for Prelim. Inj. ("Anto PI Decl.") at 1-2.) Anto named his business after the family business in Lebanon and marketed his products to Middle Eastern emigres in California and elsewhere in the United States. (Nading Decl. Ex. B at 5; *see also id.* at Ex. A.) In 1993 Plaintiff registered trademark "Karoun Dairies" and in 2003 it registered the mark "Karoun's California Cheese, a Whole Milk Cheese." (Kimball Decl. Ex. A & B.) Plaintiff has invested in advertising and promoting its marks in the United States by attending national trade shows and placing newspaper and television advertising. (Anto PI Decl. at 4-5; Kimball Decl. Ex. B at 32-33.) Plaintiff registered its first domain name, karouncheese.com, in 1999 and its second, karoundairiesinc.com, in 2006. (Ara Mot. to Dismiss Decl. at 1.) Starting in February 2007, Plaintiff registered a number of additional marks, including a circular logo with a drawing of a cow's head and the word "karoun." (Kimball Decl. Ex. C-H.)

In January 2006 Ara retained intellectual property counsel in California. (Decl. of Ara Baghdassarian in Supp. of Mot. to Dismiss for Lack of Personal Jurisdiction ("Ara Personal Jurisdiction Decl.") at 1.) In June 2006 Ara's counsel filed a trademark application to register the Karoun mark in the United States on behalf of Karoun Lebanon. Plaintiff objected and demanded Ara to withdraw the application. Ara, on the other hand, asserted that Karoun Lebanon intended to expand its business into the United States under the Karoun name and demanded that Plaintiff cease and desist using the name. He argued that Anto had sold his right to use the mark to Ara when he sold him his interest in the family business. In May 2007 Ara's trademark application was abandoned. (*See* Order Denying Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, dated July 13, 2009 ("Personal Jurisdiction Order"), at 4.) In

/ / / / /

November 2007, Karoun Lebanon was able to register in the United States a circular logo with two cows. (Ara PI Decl. Ex. B at 14.)

In July 2006 following the outbreak of military conflict in Lebanon, Ara and his family immigrated into the United States. (Ara Personal Jurisdiction Decl. at 1.) In October 2006, Ara and his family visited Anto and his family in California. While the precise nature of this visit is disputed, Anto contends that Ara demanded a share in Plaintiff corporation or compensation, both of which Anto denied. (*See* Personal Jurisdiction Order at 4-5.)

From October 2006 to August 2008, Ara contacted "a couple of times" Raffi Kradjian of Kradjian Importing Co. in California. Mr. Kradjian is in the business of importing and distributing Middle Eastern specialty foods in the United States. The precise nature of Ara's contacts with Mr. Kradjian are disputed. According to Ara, he contacted Mr. Kradjian on behalf of Karoun Lebanon to "get a general feel of the U.S. market." According to Anto, Ara represented that his business was the "real" Karoun Dairies and asked him to deal only with Ara to the exclusion of Plaintiff. (*See* Personal Jurisdiction Order at 5.)

In February 2007, Ara incorporated Karlacti in Delaware and in July 2008, he registered a domain name karlacti.com. Although Karlacti has not and is not using the Karoun mark in commerce in connection with any goods or services in the United States, its plans for expansion in the United States were put on hold due to this litigation. (Third Decl. of Ara Baghdassarian in His Capacity as President of Karlacti, Inc., a Delaware Corp., in Supp. of Defs/Countercls' Opp'n to Pl./Counterdef's Mot. for Prelim. Inj. ("Ara Karlacti PI Decl.") at 2; Second Decl. of Ara Baghdassarian in His Capacity as President of Karlacti, Inc., a Delaware Corp., in Supp. of Defs/Countercls' Opp'n to Pl./Counterdef.'s Mot. to Dismiss ("Ara Karlacti Mot. to Dismiss Decl.").)

In September 2007, Ara incorporated Karoun Canada, and in July and August 2008 registered domain names karoundairies.ca, karouncheese.ca, karounfoods.com, karoundairiesgroup.com, karouncheese.net and karoundairy.com. The company had sales in Canada starting in November 2007. All of its customers have been in Canada, and it has never sold or offered for sale any products in the United States. The products are labeled "Not for sale

in the USA." Its operations have been suspended due to this litigation. (Second Decl. of Ara Baghdassarian in His Capacity as President of Karoun Dairies, Inc., a Canadian Corp., in Supp. of Defs/Countercls' Opp'n to Pl./Counterdef's Mot. to Dismiss (Ara Karoun Canada Mot. to Dismiss Decl."); Third Decl. of Ara Baghdassarian in His Capacity as President of Karoun Canada, Inc., a Canadian Corp., in Supp. of Defs/Countercls' Opp'n to Pl./Counterdef.'s Mot. for Prelim. Inj.)

Plaintiff admits that Karoun Canada registered the Karoun mark in Canada and has a right to market and sell its goods under the Karoun name there. (Pl.'s Mot. for Prelim. Inj. at 19.) In addition, in response to Plaintiff's demand letters (Ara PI Decl. at 1-2), Defendants' websites include notices stating, "Licensees of the original KAROUN DAIRIES S.A.L. Beirut - Lebanon. Not affiliated with KAROUN DAIRIES, Inc. California - USA incorporated without our consent" and "KAROUN DAIRIES S.A.L. does not sponsor ARZ, GOPI LASSI and YANNI branded dairy products."[4] (Anto PI Decl. Ex. G.) Defendants are not "currently using the KAROUN mark in commerce in connection with any goods or services in the United States, nor targeting the United States under the KAROUN brand." (Defs' Opp'n to Pl.'s Mot. for Prelim. Inj. at 3; *see also id.* at 17.)

In August 2008 Plaintiff filed a complaint against Ara, Karlacti and Karoun Canada. The operative complaint claims trademark infringement under the Lanham Act and federal common law, false designation of origin and federal unfair competition, dilution, and unfair competition under California law. Defendants filed a counterclaim for false designation of origin and federal unfair competition under the Lanham Act, cancellation of trademark registrations, and accounting.

Contending that it likely will prevail on the merits of its infringement and unfair competition claims, Plaintiff filed a motion for a preliminary injunction, requesting an order prohibiting Defendants from using any trademarks owned by Plaintiff, or any references thereto and from using Plaintiff's marks on any websites or products, including the use of Plaintiff's

---

[4] ARZ, GOPI LASSI and YANNI are some of the products sold by Plaintiff.

marks in the URL.  In the alternative, Plaintiff requests that Defendants' websites be modified to preclude visitors from the United States.

To the extent Plaintiff requests relief against Karoun Lebanon and its two web sites, karoun.com and karoundairies.com, the court notes that Karoun Lebanon is not a party to this action.  "A federal court may issue an injunction if it has personal jurisdiction over the parties . . .; it may not attempt to determine the rights of persons not before the court." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983); Fed. R. Civ. Proc. 65(d).  Accordingly, Plaintiff's motion for a preliminary injunction is denied as to Karoun Lebanon and its websites.

With respect to Karoun Canada, Karlacti and Ara, "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, __ U.S. __; 129 S. Ct. 365, 376 (2008)  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 374.

The burden of proving the foregoing elements is on the moving party. *Marlyn Neutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 n.2 (9th Cir. 2009). "Once the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the non-moving party to show a likelihood of that its affirmative defense will succeed." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007).

To prevail on a trademark infringement claim, Plaintiff must show that Defendants "(1) use in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Marlyn Neutraceuticals,* 571 F.3d at 877. Plaintiff assumes that Defendants' use of the Karoun mark constitutes "use in commerce."  It contends that Defendants have caused initial interest confusion, which "occurs when the defendant uses the plaintiff's trademark in a manner calculated to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion." *Interstellar Starship Serv., Ltd. v. Epix, Inc.*, 304 F.3d 936, 941 (9th Cir. 2002).  It argues that

Defendants' use of domain names which include the word "Karoun" confuses customers who wish to purchase products from Plaintiff.[5] "To evaluate the likelihood of confusion, including interest confusion, the so-called *Sleekcraft* factors provide non-exhaustive guidance," *Id*. at 942. However, in the internet context, the three most important *Sleekcraft* factors "are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the parties' simultaneous use of the Web as a marketing channel." *Id*. When these factors suggest confusion, the other factors must weigh strongly against a likelihood of confusion to avoid the finding. *Id*.

It is undisputed that there is a likelihood of confusion in this case. The mark "Karoun Dairy" is the same, the products are very similar, *i.e.*, Mediterranean-style dairy products, and the parties use the internet as their marketing channel. The remaining *Sleekcraft* factors do not negate the likelihood of confusion.

Defendants argue the confusion was created when Plaintiff adopted the Karoun mark. Plaintiff relies on a 2004 e-mail from a Costco employee to rostom@karoundairies.com to show an instance of actual confusion. (Anto PI Decl. Ex. I.) Because the domain name was registered to Karoun Lebanon, the e-mail went there.[6] However, this was two years before Ara attempted to register a trademark in the United States, and three years before Karoun Canada and Karlacti were incorporated. It therefore appears that Defendants did not cause the confusion, but that it originated with Plaintiff's use of the Karoun mark.

Defendants do not dispute the strong likelihood of confusion, but instead argue that they are senior users and have a right to use the Karoun mark in the United States. Plaintiff counters that Plaintiff was the first to register the mark in the United States and has exclusive use under

---

[5] Plaintiff's reliance on internet search engine results to support its argument is irrelevant. *Interstellar Starship*, 304 F.3d at 945 n.10 ("[W]e find largely irrelevant what results when a given term is input into a search engine. Our initial interest confusion analysis does not depend on a given business's payment or lack thereof to the various search engines.").

[6] In an attempt to show bad faith on Ara's part, Anto speculates that Karoun Lebanon set up e-mail boxes with the names of Plaintiff's employees attached to Karoun Lebanon's domain names. (Anto PI Decl. at 6.) This argument is rejected because the evidence offered in its support is speculative and because Defendants provided evidence to the contrary. (*See* Ara PI Decl. at 1.) Moreover, the e-mail was forwarded the same day to Plaintiff.

the territoriality principle of trademark law.

"A fundamental principle of trademark law is first in time equals first in right. . . . [¶] Under the principle of first in time equals first in right, priority ordinarily comes with earlier use of a mark in commerce." *Grupo Gigante SA de CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1093 (9th Cir. 2004). It is undisputed that Karoun Lebanon used the mark in commerce first, but not in the United States, and that Plaintiff was first to use the mark in the United States. Under the territoriality principle, the "priority of trademark rights in the United States depends solely upon priority of use in the United States, not on priority of use anywhere else in the world. Earlier use in another country usually just does not count." *Id*. (brackets, footnote and internal quotation marks omitted).

However, "even those who use marks in other countries can sometimes - when their marks are famous enough - gain exclusive rights to the marks in this country." *Id*. at 1095. This is the case even when the foreign user has not used the mark in the United States. *Id*. at 1094; *see also id.* at 1095.

> While the territoriality principle is a long-standing and important doctrine within trademark law, it cannot be absolute. An absolute territoriality rule without a famous-mark exception would promote consumer confusion and fraud. Commerce crosses borders. In this nation of immigrants, so do people. Trademark is, at its core, about protecting against consumer confusion and palming off. There can be no justification for using trademark law to fool immigrants into thinking that they are buying from the store they liked back home.

*Grupo Gigante*, 391 F.3d at 1094 (footnote omitted). To come within the exception, the foreign user must show that its mark acquired a secondary meaning and a substantial percentage of consumers in the relevant American market is familiar with the foreign mark. *Id*. at 1098.

"Secondary meaning refers to a mark's actual ability to trigger in consumers' minds a link between a product or service and the source of that product or service. That is, a mark has secondary meaning when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Id*. at 1095 (internal quotation marks and footnote omitted).

Although Anto asserts that the "trademark and brand name KAROUN was not known by consumers in the United States until I started Karoun in 1992" (Anto PI Decl. at 1), this bald

assertion is contradicted by prior representations on Plaintiff's website:

> Karoun, which is Armenian for "springtime," was the name of the family factory in Beirut, where Ohannese Baghdassarian specialized in yogurt before developing cheese-making skills. *Almost anyone from that part of the world will recognize the name.*

(Nading Decl. Ex. A. (emphasis added).) According to Plaintiff's own advertising, the Karoun name was already known among the Middle Eastern immigrants in the United States.

To determine whether a substantial percentage of American consumers in the relevant market is familiar with the foreign mark, the court considers the following:

> The relevant American market is the geographic area where the defendant uses the alleged infringing mark. In making this determination, the court should consider such factors as the intentional copying of the mark by the defendant, and whether customers of the American firm are likely to think they are patronizing the same firm that uses the mark in another country. While these factors are not necessarily determinative, they are particularly relevant because they bear heavily on the risks of consumer confusion and fraud, which are the reasons for having a famous-mark exception.

*Grupo Gigante*, 391 F.3d at 1098. It is beyond dispute that Plaintiff intentionally copied the Karoun mark. In addition to showcasing the history of Karoun Lebanon on Plaintiff's website, Anto discussed it in interviews for industry publications. For example, Cheese Market News published interviews with Anto and later his son Rostom Baghdassarian on September 15, 2000 and July 18, 2008, respectively. (Nading Decl. Ex. B & C.) Anto admitted that he named his business after his family's plant in Beirut. (*Id.* Ex. B at 5.) In each instance, Plaintiff drew on the long history of the family business. (*Id.* Ex. B & C.) However, when Ara asked Cheese Market News for a clarification of the 2008 article to state that Karoun Lebanon is still in existence and that it is separate from Plaintiff, Plaintiff protested. (*See* Kimball Decl. Ex. L; *se also* Nading Decl. Ex. C at 12-13.) Plaintiff used the Karoun mark because it was already well-known in the United States among the immigrants from the Middle East. Accordingly, Defendants, as Karoun Lebanon's licensees, have shown a likelihood of prevailing on their senior user defense.

It therefore does not appear likely that Plaintiff can prevail on its infringement claims against Defendants. Because Plaintiff's unfair competition claim is based entirely on the

infringement claims, it is also not likely that Plaintiff can prevail on the unfair competition claim.

In the absence of likelihood of success on the merits, irreparable harm to Plaintiff cannot be presumed. *See Marlyn Pharmaceuticals, Inc.*, 571 F.3d at 877. Furthermore, any harm likely to result from the denial of Plaintiff's motion is slight. Even if Plaintiff had met its burden for a preliminary injunction, the court could not grant the requested relief against Karoun Lebanon or its websites, karoun.com and karoundairies.com, because Karoun Lebanon is not a party. Plaintiff admits that Karoun Canada registered the mark in Canada and is entitled use it there. (Pl.'s Mot. for Prelim. Inj. at 19.) Karlacti does not incorporate the Karoun name. (*See* Kimball Decl. Ex. I at 23.) Any relief would therefore be limited to the accessibility of Karoun Canada's websites from the United States and disabling links, if any, on karlacti.com. However, because Karoun Canada's and Karlacti's websites already contain disclaimers stating that they are not associated with Plaintiff and because neither is selling any products, the benefit to Plaintiff from granting injunctive relief likely would be meager. The likelihood of irreparable harm therefore does not weigh in favor of granting Plaintiff's motion.

Last, based on the facts of this case, the court cannot find that the "balance of equities tips in [Plaintiff's] favor" or that "an injunction is in the public interest." *See Winter*, 129 S. Ct. at 376. Accordingly, Plaintiff's motion for a preliminary injunction is **DENIED**.

Plaintiff also filed a motion to dismiss Defendants' counterclaims for lack of trademark standing. A Rule 12(b)(6) motion tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, brackets and citations omitted). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins.*

*Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

"[W]hen ruling on a motion to dismiss, [the court] must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint," with the exception of the "incorporation by reference doctrine, which permits [the court] to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [complaint]." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation marks and citations omitted). Neither party requested to convert Plaintiff's motion to dismiss to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Accordingly, Plaintiff's objections to Ara's affidavits filed with his opposition are sustained. Ara's affidavits were not considered in ruling on this motion. For the same reasons, Plaintiff's assertions of fact in its briefs (*see, e.g.,* Pl.'s Mot. to Dismiss at 3 & 9 n.3; Reply at 8), were also not considered.

Plaintiff argues that Defendants lack standing to pursue a counterclaim for false designation of origin and federal unfair competition under 15 U.S.C. Section 1125(a) because they did not use the Karoun mark in commerce in the United States. (*See, e.g.,* Pl.'s Mot. to Dismiss at 5-6.)[7] Defendants point out, however, that in its motion for a preliminary injunction, Plaintiff took the opposite position on Defendants "use in commerce" of the Karoun mark. *See Marlyn Neutraceuticals,* 571 F.3d at 877 ("use in commerce" is an element). Moreover, in opposition to Plaintiff's motion to dismiss for lack of personal jurisdiction, Anto declared that Karoun Canada's web sites "actively solicit[] business from people in . . . the United States and California." (Decl. of Anto Baghdassarian in Supp. of Karoun Dairies, Inc.'s Opp'n to Defs'

---

[7] For purposes of this claim, the correct standard is that the claimant "need only allege commercial injury based upon deceptive use of a trademark or its equivalent to satisfy the standing requirements." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005); *see also Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109-10 (9th Cir. 1992).

Mot. to Dismiss at 3.) Similarly, Plaintiff alleges in the operative complaint that Karoun Canada "makes, distributes and sells the very same products as [Plaintiff] in the United States." (Second Am. Compl. at 6.)

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (brackets, internal quotation marks and citation omitted). "Its purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* (internal quotation marks and citations omitted). In considering whether to apply this equitable doctrine in a particular case, three factors may inform the decision:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750-51 (internal quotation marks and citations omitted).

In this case, the position that Defendants did not use the marks in commerce in the United States, asserted in the motion to dismiss, is "clearly inconsistent" with the position that they did, asserted in support of the motion for a preliminary injunction. It is also inconsistent with the allegations in the operative complaint and declaration supporting personal jurisdiction over Defendants. The court relied on Anto's declaration regarding Karoun Canada's activities in the United States, among other things, in denying Defendants' motion to dismiss for lack of personal jurisdiction. The declaration prejudiced Defendants because it was one of the bases for holding that they were subject to personal jurisdiction in California. Furthermore, Plaintiff's attempt to advance the inconsistent positions in the pending motions seeks an inherently inequitable result

– that Defendants be enjoined based on allegedly infringing activity on one hand, while they should be precluded from asserting claims against Plaintiff which arise from the right to use the same mark. This tactic is particularly inequitable because Defendants have delayed their planned expansion in the United States due to this pending action. (Ara Karlacti Mot. to Dismiss Decl.; Ara Karoun Canada Mot. to Dismiss Decl.)

Because the fundamental premise of Plaintiff's lawsuit and its motion for a preliminary injunction is that Defendants are using the Karoun mark in commerce in the United States so as to damage Plaintiff's interest in the same mark in the United States, and in order to prevent unfair detriment to Defendants, Plaintiff is hereby estopped from arguing that Defendants lack standing on their counterclaim because they are not using the Karoun mark in commerce in the United States.

Moreover, Defendants allege that Karoun Canada and Karlacti are exclusive licensees of Karoun Lebanon. (Answer and Countercl. at 9.) To the extent Plaintiff's argument is based on the contention that a third party not before the court is the mark's owner, the contention is without merit. *See* Ninth Cir. Model Jury Instr. 15.14.

Plaintiff next contends that Defendants lack standing and fail to allege sufficient grounds to state a claim for cancellation of a trademark registration under 15 U.S.C. Section 1064(3). Defendants seek to cancel Plaintiff's registered marks "Karoun Dairies;" "Karoun's California Cheese, a While Milk Cheese;" "Karounette" and "Karoun" & Design.

"The Lanham Act allows for cancellation of a Principal Register registration by anyone 'who believes that he is or will be damaged . . . by the registration.'" *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000), quoting 15 U.S.C. § 1064 (ellipsis in *Cunningham*). "The party seeking cancellation must prove two elements: (1) that it has standing; and (2) that there are valid grounds for cancelling the registration." *Id*.

Plaintiff argues that Defendants lack standing for the cancellation claim because they are not using the marks in commerce in the United States.[8] For the reasons discussed with respect to

---

[8] In the cancellation context, standing "requires only that the party seeking cancellation believe that it is likely to be damaged by the registration. A belief in likely damage can be shown by establishing a direct commercial interest." *Id*. (internal citations omitted); *see*

the first cause of action for false designation of origin and federal unfair competition, this argument is rejected.

With respect to the second element of cancellation, Defendants rely on section 1064(3), which provides that a registration can be cancelled at any time if "the registered mark is being used by . . . the registrant so as to misrepresent the source of goods or services on or in connection with which the mark is used." "A cancellation claim for misrepresentation under § 14(3) requires a pleading that registrant deliberately sought to pass off its goods as those of petitioner. Willful use of a confusingly similar mark is not sufficient." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 20:60 (4th ed. 2010).

Defendants allege that Plaintiff intentionally used the Karoun name because it is well known in the Middle East, and therefore well known to the Middle Eastern emigres in California. (Answer and Countercl. at 12, 13.) Plaintiff intended its potential customers to associate Plaintiff's products with the products of Karoun Lebanon, although Plaintiff was not associated with Karoun Lebanon. (*Id* at 12, 15.) Specifically, on its website Plaintiff stated that "Karoun . . . was the name of the family factory in Beirut, where Ohannese Baghdassarian specialized in yogurt before developing cheese-making skills. Almost anyone from that part of the world will recognize the name." (*Id*. at 12.)

These allegations go beyond willful use of a confusingly similar mark. Defendants allege specific facts indicating a deliberate effort to pass off Plaintiff's goods as Karoun Lebanon's and trade on its reputation. Accordingly, Plaintiff's motion to dismiss the cancellation claim is denied.

Last, Plaintiff seeks to dismiss the third cause of action for accounting, arguing that it is a remedy rather than an independent claim and that it depends entirely on the success of the remaining claims. Because Plaintiff's motion is denied with respect to the remaining claims, its

/ / / / /

---

*also Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346, 349 (9th Cir. 1984) (the petitioner "must show a real and rational basis for his belief that he would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest in his own mark").

motion to dismiss accounting is also denied. Based on the foregoing, Plaintiff's motion to dismiss the counterclaims is **DENIED**.

**IT IS SO ORDERED**.

DATED: September 13, 2010

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. WILLIAM V. GALLO
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL