UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAROUN DAIRIES, INC., a California corporation,<br><br>                    Plaintiff,<br>v.<br>KARLACTI, INC., a Delaware corporation, et al.,<br><br>                    Defendants. | Case No.: 08cv1521 AJB (WVG)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OR, ALTERNATIVELY, REQUEST FOR CERTIFICATION OF ORDER FOR INTERLOCUTORY APPEAL |

Before the Court is Plaintiff's Motion for Reconsideration or, alternatively, Request for Certification of the Court's Order for Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b).[1] (Doc. No. 226.) Plaintiff seeks reconsideration of the Court's previous order granting Defendants' motion for summary judgment as to all of Plaintiff's claims. (Doc. No. 223.) Defendants oppose Plaintiff's motion with regard to both reconsideration and certification for interlocutory appeal. (Doc. No. 229.) For the reasons set forth below, Plaintiff's Motion for Reconsideration or, alternatively, Request for Certification of the Summary Judgment Order for Interlocutory Appeal is DENIED.

---

[1] Plaintiff requests that the Court certify an "issue" from the Court's previous summary judgment order for interlocutory appeal; however, 28 U.S.C. § 1292(b) authorizes a district court judge to certify an "order" for interlocutory appeal. For this reason, the Court construes Plaintiff's request as a request for certification of the Court's previous summary judgment order for interlocutory appeal.

## *Background*

### *I. Summary of the Case*

This trademark infringement action arises from a family dispute over the right to use a trademark in the United States that was previously established in the family business in Lebanon. Plaintiff was first to use and register the mark in the United States and filed this infringement action against Defendants. Defendants filed a counterclaim alleging that Plaintiff is the infringer and requesting cancellation of Plaintiff's registered mark.

Plaintiff's founder, Anto Baghdassarian (hereinafter "Anto") and Defendant Ara Baghdassarian (hereinafter "Ara") are brothers. Anto and Ara both worked for many years in the family dairy business in Lebanon ("Karoun Lebanon").[2] Karoun Dairies is a trade name which has been used in the family business since 1931 and is registered in Lebanon. Karoun Lebanon was well known in the Middle East and exported its products as far as Paris and London.[3] (Answer and Countercl. at 10-11.) Ara was Karoun Lebanon's financial controller and manager. (Answer and Countercl. at 10.) Ara has been the Vice-President – Director General (Vice-Chairman and General Manager) of Karoun Dairies Lebanon since 1981, and President – Director General (Chairman and General Manager) since 1990. *Id.* Anto was a shareholder, director, and officer of Karoun Lebanon. In these capacities, he was privy to the company's plans to further expand its business outside Lebanon. (*Id.* at 11.) In approximately 1990, after the death of his father and due to civil unrest in Lebanon, Anto sold his interest in Karoun Lebanon to Ara, and moved to the United States.[4] While Ara asserts that they entered into an agreement that Anto would not enter the dairy business, Anto disputes this.[5]

---

[2] The family business was established in 1931 as a sole proprietorship known as Laiterie Karoun. In 1972, it was incorporated in Lebanon under the name Karoun Dairies, S.A.L. Karoun Dairies and Karlacti are the exclusive licensees of non-party Karoun Dairies S.A.L., a Lebanese corporation ("Karoun Dairies Lebanon"). (Order (1) Den. Pl.'s Mot. for Prelim. Inj. and (2) Den. Pl.'s Mot. to Dismiss the Countercl. at 3, [Docket No. 67] (hereinafter "Order").)

[3] The factual allegations from pleadings referenced herein are not disputed.

[4] *Id.*; Decl. of Andrea M. Kimball in Supp. of Karoun Dairies, Inc.'s Mot. for Prelim. Inj. ("Kimball Decl.") Ex. L at 30; Decl. of John M. Nading in Supp. of Defs/Countercls' Opp'n to Pl./Counterdef.'s Mot. to Dismiss ("Nading Decl.") Ex. B at 5).

[5] Cf. Anto PI Decl. at 2 with Third Decl. of Ara Baghdassarian in Supp. of Defs/Countercls' Opp'n to Pl./Counterdef's Mot. to Dismiss ("Ara Mot. to Dismiss Decl.") at 1.

Subsequently, Ara continued to manage Karoun Lebanon, which proceeded to expand its business. Karoun Lebanon participated in local and international exhibitions, and advertised in international directories and journals. (Answer and Countercl. at 11.) In 1998, Karoun Lebanon registered the karoun.com and karoundairies.com domain names.[6] Karoun Lebanon focused its expansion efforts on the United States, Canada, Australia, and Europe because these regions were politically stable and had large Lebanese and Armenian communities. Karoun Lebanon registered its mark in Australia and Canada, attempted registration in the United States, and has a pending Community Trademark application in Europe. (Answer and Countercl. at 11-12.) In 2004 or 2005, Karoun Lebanon had to temporarily suspend production in Lebanon during a military conflict; however, it continued to use the Karoun mark through its exclusive licensees Defendants Karoun Dairies, Inc., a Canadian corporation ("Karoun Canada"), and Karlacti, Inc., a Delaware corporation ("Karlacti"). (*See* Ara Mot. to Dismiss Decl. at 2.)

In 1992, Anto started a dairy business in California, incorporated Plaintiff, and started selling cheese products. (Decl. of Anto Baghdassarian in Supp. of Karoun Dairies, Inc.'s Mot. for Prelim. Inj. ("Anto PI Decl.") at 1-2.) Plaintiff is a corporation organized and existing under the laws of the State of California. (*Id.*) Anto named his business after the family business in Lebanon and marketed his products to Middle Eastern emigrants in California and elsewhere in the United States. (Nading Decl. Ex. B at 5; *see also id.* at Ex. A.) In 1993, Plaintiff registered the trademark "Karoun Dairies" and in 2003, it registered the mark "Karoun's California Cheese, a Whole Milk Cheese." (Kimball Decl. Ex. A & B.) Plaintiff has invested in advertising and promoting these marks in the United States by attending national trade shows and placing newspaper and television advertising. (Anto PI Decl. at 4-5; Kimball Decl. Ex. B at 32-33.) Plaintiff registered its first domain name, karouncheese.com, in 1999 and its second, karoundairiesinc.com, in 2006. (Ara Mot. to Dismiss Decl. at 1.) Starting in February 2007, Plaintiff registered a number of additional marks, including a circular logo with a drawing of a cow's head and the word "karoun." (Kimball Decl. Ex. C-H.)

---

[6] Suppl. Decl. of Andrea M. Kimball in Supp. of Karoun Dairies, Inc.'s Reply in Supp. of Its Mot. for Prelim. Inj. (Suppl. Kimball Decl.") Ex. 3.

In January 2006, Ara retained intellectual property counsel in California. (Decl. of Ara Baghdassarian in Supp. of Mot. to Dismiss for Lack of Personal Jurisdiction ("Ara Personal Jurisdiction Decl.") at 1.) In June 2006, Ara's counsel filed a trademark application to register the Karoun mark in the United States on behalf of Karoun Lebanon. Plaintiff objected and demanded Ara withdraw the application. Ara refused and asserted that Karoun Lebanon intended to expand its business into the United States under the Karoun name and demanded that Plaintiff cease and desist using the name. Ara argued that Anto had sold his right to use the mark to Ara when he sold him his interest in the family business. In May 2007, Ara's trademark application was abandoned. (*See* Order Denying Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, dated July 13, 2009 ("Personal Jurisdiction Order"), at 4.) In November 2007, Karoun Lebanon was able to register in the United States a circular logo with two cows. (Ara PI Decl. Ex. B at 14.)

In July 2006, following the outbreak of military conflict in Lebanon, Ara and his family immigrated into the United States. (Ara Personal Jurisdiction Decl. at 1.) In October 2006, Ara and his family visited Anto and his family in California. While the precise nature of this visit is disputed, Anto contends that Ara demanded a share in Plaintiff corporation or compensation, both of which Anto denied. (*See* Personal Jurisdiction Order at 4-5.)

From October 2006 to August 2008, Ara contacted "a couple of times" Raffi Kradjian of Kradjian Importing Co. in California. Mr. Kradjian is in the business of importing and distributing Middle Eastern specialty foods in the United States. The precise nature of Ara's contacts with Mr. Kradjian are disputed. According to Ara, he contacted Mr. Kradjian on behalf of Karoun Lebanon to "get a general feel of the U.S. market." According to Anto, Ara represented that his business was the "real" Karoun Dairies and asked him to deal only with Ara to the exclusion of Plaintiff. (*See* Personal Jurisdiction Order at 5.)

In February 2007, Ara incorporated Karlacti in Delaware, and in July 2008, he registered the domain name karlacti.com. Although Karlacti has not and is not using the Karoun mark in commerce in

connection with any goods or services in the United States, plans for expansion in the United States were put on hold due to this litigation.[7]

In September 2007, Ara incorporated Karoun Canada, and in July and August 2008, he registered domain names karoundairies.ca, karouncheese.ca, karounfoods.com, karoundairiesgroup.com, karouncheese.net and karoundairy.com. The company had sales in Canada starting in November 2007. All of its customers have been in Canada, and it has never sold or offered for sale any products in the United States and the products sold in Canada are labeled "Not for sale in the USA." Karoun Canada's operations have been suspended due to this litigation.[8]

Plaintiff admits that Karoun Canada registered the Karoun mark in Canada and has a right to market and sell its goods under the Karoun name there. (Pl.'s Mot. for Prelim. Inj. at 19.) In addition, in response to Plaintiff's demand letters (Ara PI Decl. at 1-2), Defendants' websites include notices stating, "Licensees of the original KAROUN DAIRIES S.A.L. Beirut - Lebanon. Not affiliated with KAROUN DAIRIES, Inc. California - USA incorporated without our consent" and "KAROUN DAIRIES S.A.L. does not sponsor ARZ, GOPI LASSI and YANNI branded dairy products." (Anto PI Decl. Ex. G.) Defendants are not "currently using the KAROUN mark in commerce in connection with any goods or services in the United States, nor targeting the United States under the KAROUN brand." (Defs' Opp'n to Pl.'s Mot. for Prelim. Inj. at 3, 17.)

In August 2008, Plaintiff filed a complaint against Ara, Karlacti and Karoun Canada. The operative complaint claims trademark infringement under the Lanham Act and federal common law, false designation of origin and federal unfair competition, dilution, and unfair competition under California law. Defendants filed a counterclaim for false designation of origin and federal unfair competition under the Lanham Act, cancellation of trademark registrations, and accounting.

---

[7] Third Decl. of Ara Baghdassarian in His Capacity as President of Karlacti, Inc., a Delaware Corp., in Supp. of Defs/Countercls' Opp'n to Pl./Counterdef's Mot. for Prelim. Inj. ("Ara Karlacti PI Decl.") at 2; Second Decl. of Ara Baghdassarian in His Capacity as President of Karlacti, Inc., a Delaware Corp., in Supp. of Defs/Countercls' Opp'n to Pl./Counterdef.'s Mot. to Dismiss ("Ara Karlacti Mot. to Dismiss Decl.").

[8] Second Decl. of Ara Baghdassarian in His Capacity as President of Karoun Dairies, Inc., a Canadian Corp., in Supp. of Defs/Countercls' Opp'n to Pl./Counterdef's Mot. to Dismiss (Ara Karoun Canada Mot. to Dismiss Decl."); Third Decl. of Ara Baghdassarian in His Capacity as President of Karoun Canada, Inc., a Canadian Corp., in Supp. of Defs/Countercls' Opp'n to Pl./Counterdef.'s Mot. for Prelim. Inj.

*II. The Karoun Mark*

Defendants have senior trademark rights in the KAROUN mark in at least the jurisdictions of Lebanon and Canada. Plaintiff acknowledges that "[t]he KAROUN name was part of a long-held Baghdassarian family dairy business back in Lebanon since 1931." (Pl.'s Mem. of P. & A. in Supp. of Mot. for Preliminary Injunction at 2, [Doc. No. 39-1] (hereinafter "Pl.'s Mem. in Supp. of Mot. for Prelim. Inj.").) Plaintiff also admits that "Karoun Canada registered the [KAROUN] mark in Canada and is entitled to use it there." (*Id*. at 19.)

### *Analysis*

On September 28, 2012, the Court granted Defendants' motion for summary judgment as to all five of causes of action and denied Plaintiff's motion for summary judgment with regard to Defedants' counterclaims. (Doc. No. 223.) Plaintiff asks that the Court reconsider its decision with regard to Plaintiff's claims or, alternatively, to certify the order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

*I. Motion for Reconsideration*

    *a. Legal Standard*

A motion for reconsideration may be brought under Federal Rules of Civil Procedure 59(e) or 60(b). A motion is treated as a motion to alter or amend judgment under Rule 59(e) if it is filed within 28 days of entry of judgment; otherwise, it is treated as a Rule 60(b) motion for relief from a judgment or order. *See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898–99 (9th Cir. 2001)(noting that a motion for reconsideration filed within the time period set forth in Rule 59(e) is treated as a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e), while a motion filed beyond that time period is treated as a Rule 60(b) motion for relief from a judgment or order). Inasmuch as Plaintiff's motion was filed within twenty-eight days of the Court's previous order, Plaintiff's motion is properly characterized as arising under Rule 59(e) rather than Rule 60(b). *Id.* The Court may grant a motion to alter or amend judgment under Rule 59(e)[9] under the following circumstances:

---

[9] The standard for reconsideration under Rules 60(b) and 59(e) are substantially similar. *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009).

>   (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law.

*Duarte v. Bardales*, 526 F.3d 563, 567 (9th Cir. 2008) (quoting *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001)).

### *b. Discussion*

Plaintiff seeks reconsideration of the Court's summary judgment order for the following reasons: (1) the Court's previous decision was in error, and (2) *Rearden LLC v. Rearden Commerce, Inc.* constitutes an intervening change in controlling law.  683 F.3d 1190 (9th Cir. 2012).

Under Rule 59(e), reconsideration may be appropriate if the Court committed clear error or rendered a manifestly unjust decision.  In the summary judgment order, the Court determined that use of the Karoun mark in United States commerce is a fundamental element of each claim raised by Plaintiff's complaint. (Doc. No. 223 at 7-8.)  Specifically, Plaintiff's second amended complaint alleges the following five causes of action, all of which require Plaintiff to establish use in commerce: 1) infringement under § 32 of the Lanham Act, 15 USC § 1114 (First Claim); 2) false designation of origin and unfair competition under § 43(a) of the Lanham Act, 15 USC § 1125(a) (Second Claim); 3) dilution under § 43(c) of the Lanham Act, 15 USC § 1125(c) (Third Claim); 4) federal common law infringement (Fourth Claim); and 5) violation of the California Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, et seq. (Fifth Claim).  Under the Lanham Act, "use in commerce" means:

>   the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—
>   (1) on goods when - (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>   (B) the goods are sold or transported in commerce.

Section 45 of the Lanham Act, 15 U.S.C. § 1127.  Utilizing this standard, the Court concluded that Plaintiff had failed to demonstrate the requisite use by Defendants of the Karoun mark necessary to establish the prima facie elements of any of its claims inasmuch as Plaintiff had provided no evidence that Defendants have used, are using, or plan to use, the KAROUN mark in commerce in the United

1   States.  Accordingly, the Court granted Defendant summary judgment as to each of Plaintiff's five
2   claims.
3         Nevertheless, Plaintiff contends that the Court reached this conclusion in error.  Plaintiff
4   contends that "the Court applied an incorrectly restrictive legal standard in determining that the
5   defendants were not using the Karoun marks in commerce in the United States so as to trigger the
6   Court's jurisdiction over the defendant's activities." (Doc. No. 266-1 at 2.)  Plaintiff does not provide
7   legal authority for this contention, but simply refers back to its arguments within the summary judgment
8   briefing and asks the Court to "reconsider its ruling for the reasons previously submitted by Plaintiff."
9   (*Id.*)  However, the Court considered Plaintiff's objection to the use of this standard in its previous order
10  and determined that Plaintiff's objection was unfounded.  Moreover, the Court specifically referenced
11  Judge Lorenz's previous decision finding Plaintiff's argument in this regard to be "baseless" when
12  ruling upon Plaintiff's Motion for Reconsideration of the Order Denying Plaintiff's Motion to Dismiss
13  Defendants' Counterclaims. (Doc. No. 223 at 8 (citing Doc. No. 87 at 2).)  Once again, Plaintiff argues
14  that the Court utilized an overly strict use in commerce standard in its previous decisions, but fails to
15  articulate a reason for finding the use in commerce standard to be in clear error outside of those
16  arguments already considered and ruled upon by the Court.  Accordingly, Plaintiff has not established
17  that the Court's previous decision contained clear error such that Plaintiff's motion for reconsideration
18  should be granted.
19        An intervening change in the law may also warrant granting a motion to alter or amend under
20  Rule 59(e). While the parties' cross-motions for summary judgment were under submission, the Ninth
21  Circuit issued a decision in *Rearden* that Plaintiff believes warrants reconsideration of the Court's
22  previous order.  Specifically, Plaintiff relies upon *Rearden*'s discussion of the Anticybersquatting
23  Consumer Protection Act (ACPA) under 15 U.S.C. § 1125(d).  Plaintiff contends that an ACPA claim
24  does not require use of the mark as an essential element and, thus, it poses "no impediment to Plaintiff's
25  claims" that Plaintiff has offered no evidence of Defendants' use of the KAROUN mark in commerce in
26  the United States.  After reviewing the Ninth Circuit's holding in *Rearden*, the Court finds Plaintiff's
27
28

reliance upon the case as an intervening change in the law to be inapposite inasmuch there is not an ACPA claim at issue in this case.[10]

Plaintiff's Motion for Reconsideration relies upon *Rearden* for the proposition that Plaintiff need not establish Defendants' use of the mark in commerce in order to bring a cybersquatting claim under the ACPA or state law.  While this may be accurate, it is also irrelevant because Plaintiff has not pled a cybersquatting claim.  As noted above, the second amended complaint specifies the following five causes of action: 1) infringement under § 32 of the Lanham Act, 15 USC § 1114 (First Claim); 2) false designation of origin and unfair competition under § 43(a) of the Lanham Act, 15 USC § 1125(a) (Second Claim); 3) dilution under § 43(c) of the Lanham Act, 15 USC § 1125(c) (Third Claim); 4) federal common law infringement (Fourth Claim); and 5) violation of the California Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, et seq. (Fifth Claim).  While acknowledging that it has not "specifically used the terms 'cyberpiracy' or 'cybersquatting' in its pleadings, or explicitly cited subsection (d) of 15 U.S.C. § 1125," Plaintiff instead argues that "the gist of plaintiff's affirmative claim from the outset of this litigation has been that defendants have infringed plaintiff's registered marks by cyberpiracy." (Doc. No. 230.)  The Court disagrees.  Indeed, the second amended complaint carefully spells out trademark violations under 15 U.S.C. §§ 1125(a) and 1125(c).  Yet, no mention is made of a claim under the ACPA.  Nor does the complaint contain any allegations of cyberpiracy or cybersquatting.  For more than two years, the parties have proceeded with discovery, motion practice, and trial preparation without notice that Plaintiff intended to seek relief for cyberpiracy or cybersquatting under the ACPA or any other law.  (Doc. No. 229 at 4-5.)  Allowing Plaintiff to proceed with a novel cause of action at this point would unfairly prejudice the Defendants and delay the already lengthy proceedings further.  Insomuch as cyberpiracy and cybersquatting are not alleged in Plaintiff's second amended complaint, *Rearden* cannot be considered an intervening change in law with regard to the five claims at issue in the summary judgment order.

---

[10] To the extent that Plaintiff objects to the Court's alleged failure to consider *Rearden* or 15 U.S.C. § 1125(d), Plaintiff seems to allege *Rearden* constitutes an intervening change in law that would warrant reconsideration.  To the extent that it may also be construed an allegation of clear error in the Court's previous opinion, the Court finds the argument to be unsuccessful for the same overarching reasons.  Plaintiff has not alleged a cybersquatting or cyberpiracy claim up to this point such that consideration of *Rearden* and 15 U.S.C. § 1125(d) would have been warranted in the Court's previous order.

For the reasons set forth above, Plaintiff has not provided adequate grounds for the Court to reconsider its previous decision with regard to Defendants' Motion for Summary Judgment. Accordingly, Plaintiff's Motion for Reconsideration is denied.

***II. Request for Certification for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)***

Having denied Plaintiff's Motion for Reconsideration, the Court next considers Plaintiff's alternative request to certify the Court's summary judgment order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[11] For the reasons set forth below, Plaintiff's request is denied.

*a. Legal Standard*

Plaintiff's request is brought pursuant to 28 U.S.C. § 1292(b), which provides as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Accordingly, a district court may certify an order for interlocutory appeal under 28 U.S.C. § 1292(b) if the following criteria are met: (1) there is a controlling question of law; (2) there are substantial grounds for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982).

*b. Discussion*

While Plaintiff argues that *Rearden* and 15 U.S.C. § 1125(d) create "a controlling question of law as to which there is (at the very least) substantial ground for difference of opinion," the Court disagrees. As discussed above with regard to Plaintiff's motion for reconsideration, cyberpiracy and cybersquatting under 15 U.S.C. § 1125(d) and the ACPA have not been at issue in this case prior to the instant motion. They were not argued with regard to the cross-motions for summary judgment or

---

[11] While Plaintiff requests certification of the "issue" relating to *Rearden* and the appropriate use in commerce standard for Plaintiff's claims, Defendants correctly note that 28 U.S.C. § 1292(b) allows for certification of an order for interlocutory appeal. For this reason, the Court treats Plaintiff's request as a request for interlocutory appeal of the Court's decision in the order granting Defendants' motion for summary judgment. (Doc. No. 223).

relevant to the Court's decision in the summary judgment order.  Accordingly, *Rearden* and 15 U.S.C. § 1125(d) do not create a controlling question of law in this matter.  Nor does the Court find that there are substantial grounds for difference of opinion regarding their applicability to Plaintiff's claims.  There is simply no need to address *Rearden* and 15 U.S.C. § 1125(d) when Plaintiff has not alleged a cyberpiracy or cybersquatting claim under the ACPA.  Therefore, the criteria for certification of an interlocutory appeal under 28 U.S.C. § 1292(b) are not met here, and the Court denies Plaintiff's request .

### *Conclusion*

For the reasons set forth above, the Court ORDERS that Plaintiff's Motion for Reconsideration and, alternatively, Request for Certification of the Summary Judgment Order for Interlocutory Appeal be, and it hereby is, DENIED.[12]

IT IS SO ORDERED.

DATED:  January 4, 2013

Hon. Anthony J. Battaglia
U.S. District Judge

---

[12] In their opposition to Plaintiff's motion, Defendants ask the Court to impose sanctions against Plaintiff's counsel for "bringing this deficient and baseless motion and force the Court and Defendants to yet again respond to Plaintiff's baseless arguments." (Doc. No. 229-9.) Defendants reference Plaintiff's continued objection to the use in commerce standard utilized by the Court. (*Id.* at 4.) While Plaintiff's motion reiterated arguments previously ruled upon by the Court, the motion raised new arguments as well.  For this reason, the Court is not inclined to issue sanctions at this time.  However, Plaintiff is warned that sanctions may be imposed in the future should Plaintiff continue to relitigate issues already decided by the Court.