1  LICIA E. VAUGHN (Bar No. 185819)
   DAVID R. KNUDSON (Bar No. 265461)
2  JACOB D. ANDERSON (Bar No. 265768)
   DLA PIPER LLP (US)
3  401 B Street, Suite 1700
   San Diego, California  92101-4297
4  Tel:  619.699.2700
   Fax: 619.699.2701
5
   ANN K. FORD (D.C. Bar No. 341479,
6  admitted *pro hac vice*)
   THOMAS E. ZUTIC (D.C. Bar No. 474735,
7  admitted *pro hac vice*)
   JOHN M. NADING (D.C. Bar No. 981625,
8  admitted *pro hac vice*)
   DLA PIPER LLP (US)
9  500 8th Street, NW
   Washington, D.C.  20004
10 Tel. 202.799.4000
   Fax 202.799.5000
11
   Attorneys for Defendants/Counterclaimants
12
13            UNITED STATES DISTRICT COURT

14            SOUTHERN DISTRICT OF CALIFORNIA

15 KAROUN DAIRIES, INC., a            Case No. 08-cv-1521-AJB-WVG
   California Corporation,
16
          Plaintiff and Counterclaim
17        Defendant,                   **MEMORANDUM OF POINTS AND
                                       AUTHORITIES IN SUPPORT OF
18        v.                           DEFENDANTS/COUNTER-
                                       CLAIMANTS' MOTION TO
19 KAROUN DAIRIES., a Canadian         EXCLUDE EVIDENCE,
   Corporation; KARLACTI, Inc., a     OPINIONS, AND TESTIMONY OF
20 Delaware Corporation; and ARA       PLAINTIFF/COUNTER-
   BAGHDASSARIAN, an Individual,       DEFENDANT'S EXPERT PIERRE
21                                     EL KHOURY
          Defendants and
22        Counterclaimants.
                                       Judge:     Hon. Anthony J. Battaglia
23                                     Date:      July 30, 2013
                                       Time:      1:30 p.m.
24                                     Courtroom: 3B (Schwartz)

25 AND RELATED COUNTERCLAIMS

26

27

28

EAST\56276232.6                                      08-CV-1521-AJB-WVG

1

## **TABLE OF CONTENTS**

2

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 1

II.   SUMMARY OF EL KHOURY'S OPINIONS AND TESTIMONY. ............. 2

    A.    Acquisition of Trademark Rights Under Lebanese Law ..................... 3

    B.    Effect of An Oral Agreement Concerning the Trademark. ................. 3

    C.    Extraterritorial Effect of Lebanese Trademark Registration ............... 4

III.   LEGAL STANDARD ................................................................. 4

IV.   ARGUMENT .......................................................................... 6

    A.    El Khoury's Opinions And Testimony Should Be Excluded As Irrelevant Because the Evidence Will Not Help The Trier Of Fact Decide Any Of Ara's Counterclaims. ............................................ 6

    B.    El Khoury's Opinions And Testimony Should Be Excluded As Irrelevant Because They Are Impermissible Legal Conclusions. ........ 8

    C.    El Khoury's Opinions Concerning the Application of International Laws Are Also Legally Erroneous and Thus Are Unreliable. ............................................................................. 9

    D.    Even If Lebanese Law Is Determined To Be Relevant, El Khoury's Opinion And Testimony Should Be Excluded As Unreliable Because He Incorrectly Applies Lebanese Law To The Facts Of This Case. ...................................................... 11

    E.    El Khoury's Opinions And Testimony Should Be Excluded As Unreliable Because He Relies On Facts Not Substantiated By Evidence. ..................................................... 12

    F.    El Khoury's Opinions And Testimony Should Be Excluded As Unreliable Because He Fails to Analyze the Facts Under Lebanon's Statute of Frauds. ............................................... 14

V.    CONCLUSION ..................................................................... 15

1

## TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Aguilar v. Int'l Longshoremen's Union*,
   966 F.2d 443 (9th Cir. 1992) ................................................................................. 8

5

6

*Allison v. McGhan Med. Corp.*,
   184 F.3d 1300 (11th Cir. 1999) ........................................................................... 5

7

8

*Aviva Sports, Inc. v. Fingerhut Direct Mktg, Inc.*,
   829 F. Supp. 2d 802 (D. Minn. 2011) ............................................................... 12

9

10

*Bonner v. ISP Techs., Inc.*,
   259 F.3d 924 (8th Cir. 2001) ............................................................................. 12

11

12

*Claar v. Burlington N. R.R. Co.*,
   29 F.3d 499 (9th Cir.1994) ................................................................................. 13

13

*Clausen v. M/V New Carissa*,
   339 F.3d 1049 (9th Cir. 2003) ........................................................................... 13

14

15

*Cole v. Homier Distrib. Co., Inc.*,
   599 F.3d 856 (8th Cir.2010) ............................................................................... 13

16

17

*Cooper v. Smith & Nephew, Inc.*,
   259 F.3d 194 (4th Cir.2001) ............................................................................... 13

18

19

*Daubert v. Merrell Dow Pharm., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ............................................................................... 6

20

21

*Daubert v. Merrell Dow Pharmaceuticals*,
   509 U.S. 579 (1993) ................................................................................... passim

22

23

*Elsayed Mukhtar v. Cal. State Univ. Hayward*,
   299 F.3d 1053 (9th Cir. 2003), *amended by* 319 F.3d 1073 (9th Cir. 2003) ....... 5

24

*Grupo Gigante SA v. Dallo & Co.*,
   391 F.3d 1088 (9th Cir. 2004) ............................................................................. 9

25

26

*Hangarter v. Provident Life & Accident Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ............................................................................... 8

27

28

-ii-

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Kennedy v. Collagen Corp.*,
4
    161 F.3d 1226 (9th Cir. 1998) ................................................................................ 6

5

*Kumho Tire Co. v. Carmichael*,
6
    526 U.S. 137 (1999) .................................................................................... 5, 6

7

*Murphy v. FedEx Nat., Inc.*,
    618 F.3d 893 (8th Cir. 2010) ............................................................................. 13
8

9

*Nationwide Transp. Fin. v. Cass Info. Sys.*,
    523 F.3d 1051 (9th Cir. 2008) ......................................................................... 8, 9

10

*Smith v. Pac. Bell*,
11
    649 F. Supp. 2d 1073 (E.D. Cal. 2009) .............................................................. 8

12

*Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*,
13
    No. CV 02-2258 JM (AJB), 2007 WL 935703 (S.D. Cal. Mar. 7, 2007) ............ 4

14

*United States v. Brodie*,
15
    858 F.2d 492 (9th Cir.1988), *overruled on other grounds by United States*
    *v. Morales*, 108 F.3d 1031 (9th Cir.1997) (en banc) ........................................ 10
16

17

*United States v. Weitzenhoff*,
    35 F.3d 1275 (9th Cir. 1993) ........................................................................... 8, 9

18

**STATUTES**
19

20

15 U.S.C. § 1064(3) ................................................................................................ 1

21

15 U.S.C. § 1117 .................................................................................................... 1

22

15 U.S.C. § 1125(a) ............................................................................................... 1

23

Lebanese Code of Civil Procedure Article 254 .................................................... 14

24

Lebanese Code of Civil Procedure Article 254(1) ............................................... 14

25

Lebanese Code of Civil Procedure Article 254(2) ........................................... 14, 15

26

**OTHER AUTHORITIES**
27

28

Fed. R. Evid. 702 ............................................................................................ passim

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

**<u>Page</u>**

Fed. R. Evid. 704(a)...................................................................................8

Law No. 50 § 1, Lebanon, May 23, 1991, *Official Gazette* (1991) ..........................3

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

2   Defendants and Counterclaimants Ara Baghdassarian ("Ara"), Karoun

3   Dairies Inc., a Canadian corporation, and Karlacti, Inc., a Delaware corporation,

4   (collectively "Defendants") hereby move this Court for an order excluding any and

5   all testimony, opinions, references to testimony or opinions, or argument based

6   upon the testimony or opinions of Plaintiff's and Counterdefendant's ("Plaintiff

7   designated legal expert, Pierre El Khoury ("El Khoury").  El Khoury's opinions and

8   testimony relate to whether Ara has a right predicated under Lebanese law to

9   contest Plaintiff's United States registration and use of the KAROUN Mark.  El

10   Khoury's opinion testimony should be excluded under Rule 702 of the Federal

11   Rules of Evidence and the decision in *Daubert v. Merrell Dow Pharmaceuticals*,

12   509 U.S. 579 (1993) because they are neither relevant to the trier of fact nor

13   reliable.

14   Ara seeks economic damages pursuant to 15 U.S.C. § 1117, based on

15   Plaintiff's unfair use of the KAROUN Mark under 15 U.S.C. §§ 1064(3) and

16   1125(a).  Specifically, Ara alleges that Plaintiff intentionally used the KAROUN

17   name to mislead consumers that Plaintiff's registered marks are affiliated with

18   Karoun Dairies S.A.L. ("Karoun Lebanon").

19   Plaintiff has designated and proffered El Khoury's testimony and opinions in

20   an attempt to purportedly establish the brothers Ara's and Anto Baghdassarian's

21   ("Anto") (Chief Executive Officer and primary shareholder of Plaintiff) rights to

22   the mark under Lebanese law.  Specifically, El Khoury rendered the following four

23   opinions:  (1) Under Lebanese law, Ara has no right to contest Plaintiff's U.S.

24   registration and current use of the KAROUN Mark outside of Lebanon; (2) under

25   Lebanese law, two parties may orally agree to share the right to use a trademark in

26   separate geographic markets and that the statute of limitations for breach of such an

27   agreement is ten years from the date of breach; (3) under Lebanese law, even absent

28   an agreement to share the use of the KAROUN mark, Lebanese registration of the

-1-

1    mark has no extraterritorial effect outside of Lebanon; and (4) Lebanon is not a

2    signatory of the Madrid Protocol and the Paris Convention does not extend the

3    territorial reach of a Lebanese trademark registration to countries outside of

4    Lebanon.

5        Plaintiff cannot meet its burden to show that these opinions and related

6    testimony are relevant under the applicable law, and therefore they should be

7    excluded.  However, even if El Khoury's opinions and related testimony are

8    deemed relevant, they should be excluded as unreliable because El Khoury relies on

9    unsubstantiated assumptions and incorrectly applies Lebanese and international law

10   to the facts of this case pending in the Southern District of California.  Moreover,

11   El Khoury completely disregards applicable United States law.  Accordingly, El

12   Khoury's opinions and testimony should be excluded pursuant to Federal Rule of

13   Evidence 702 and the *Daubert* decision for the following four reasons.

14   
15   • *First*, El Khoury's opinions concerning the purported application of Lebanese law is irrelevant to the case at hand because the issues remaining to be tried are Ara's false designation of origin, cancellation, and accounting counterclaims based on U.S. law.  El Khoury's opinion on
16   the application of Lebanese law is irrelevant because United States law – not Lebanese law - governs the rights of the KAROUN Mark used in
17   United States commerce and, therefore, El Khoury's opinions will not assist the trier of fact decide any issue that must be decided in this case.
18   
19   • *Second*, El Khoury's opinions are irrelevant because they assert impermissible legal conclusions concerning the application of Lebanese law that – to the extent they must be decided at all – invade the province
20   of the Court and constitute erroneous statements of law.

21   • *Third*, even if Lebanese law is determined to be relevant, El Khoury's opinions are unreliable because he incorrectly interprets and applies
22   Lebanese law to the facts of this case.

23   • *Fourth*, the methodology that El Khoury used to analyze the protection of the KAROUN Mark in the United States is flawed because he relies on
24   facts not substantiated by evidence, fails to offer alternative analysis, and fails to consider relevant law.
25
     **II.    SUMMARY OF EL KHOURY'S OPINIONS AND TESTIMONY.**
26
         El Khoury's April 2011 expert report sets forth his opinions on the
27
     application of Lebanese law to determine the purported rights of the mark holder.
28

-2-

**A.      Acquisition of Trademark Rights Under Lebanese Law**

El Khoury opines that Ara and Anto jointly inherited the rights to the Lebanese mark ("Laiterie Karoun") despite their father Ohannes Baghdassarian's ("Ohannes") failure to renew the mark when it lapsed in 1983.  (Declaration of Licia Vaughn ("Vaughn Decl.") in Support of *Daubert* Motions Ex. I, El Khoury Exp. Rep. at 8.)  El Khoury concludes that, despite the lapse, ownership of the trademark passed through inheritance jointly to Ara and Anto when Ohannes died in 1989.  (*Id.*)  To arrive at this conclusion, El Khoury relies on a decree issued after the end of the Lebanese Civil War in 1990.  (*Id.*)  The decree stated that all legal periods, which had expired during the civil war between April 1975 and January 1991, were to be automatically extended to 1991. (*Id.* at Ex. I, El Khoury Exp. Rep. at 8 (citing Law No. 50 § 1, Lebanon, May 23, 1991, *Official Gazette* (1991))).  El Khoury interprets this to mean that Ohannes' rights to the mark were still effective even after the mark's expiration in 1983.  (*Id.* at Ex. I, El Khoury Exp. Rep. at 8.)  Not surprisingly, El Khoury cites no authority for this inference because both jurisprudence and doctrine unanimously support the opposite conclusion – that the decree's extended period of protection does not apply to trademarks.

**B.      Effect of An Oral Agreement Concerning the Trademark.**

El Khoury concludes that under Lebanese law Ara and Anto entered into a valid and binding oral agreement – which Ara disputes – that divided the KAROUN mark between them.  (Vaughn Decl. Ex. I, El Khoury Exp. Rep. at 10.) According to the alleged oral agreement, Ara was to receive the exclusive right to use the KAROUN mark in Lebanon and Anto was to receive the exclusive right to use the KAROUN mark anywhere outside of Lebanon.  (*Id.*)  El Khoury opines that under Lebanese law such an agreement is binding and that the relevant statute of limitations for breach of such an oral agreement is 10 years.  (*Id.* (citing Lebanese Code of Obligations and Contracts §§ 221, 344, 349.))  El Khoury recognizes that "[t]he existence and terms of any oral agreement will be left to a determination by

-3-

1   the trier of fact in the case" but implies that Ara is time-barred under Lebanese law

2   from bringing claims against Plaintiff.  (*Id.*)

3         **C.     Extraterritorial Effect of Lebanese Trademark Registration**

4         El Khoury states that "protection of a trademark in Lebanon, either by prior

5   use or registration, does not give protection – or enjoin others from using the mark

6   – in another country. In general trademarks have a separate existence in each legal

7   system that grants and recognizes its protection."  (Vaughn Decl. Ex. I, El Khoury

8   Exp. Rep. at 11.)  He then assesses whether the Madrid Agreement and Protocol or

9   the Paris Convention protect the KAROUN mark outside of Lebanon, and

10  concludes that Ara has no right to contest Plaintiff's registration of the mark  in the

11  United States.  (*Id.* at 11-14.)  El Khoury, however, fails to acknowledge or

12  recognize that this is a United States trademark case, before a United States District

13  Court, applying United States trademark law.  As a result, his reliance on the

14  application of Lebanese law is fundamentally flawed and will not assist the trier of

15  fact.

16  **III.   LEGAL STANDARD**

17        The admissibility of expert testimony is governed by Federal Rule of

18  Evidence 702 and the Supreme Court's decision in *Daubert*.  Rule 702 states:

19
20
21
22
23
24

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

25  Fed. R. Evid. 702.  The party offering the expert testimony bears the burden of

26  satisfying Rule 702 by a preponderance of the evidence.  *Sundance Image Tech.,*

27  *Inc. v. Cone Editions Press, Ltd.*, No. CV 02-2258 JM (AJB), 2007 WL 935703, at

28  /////

-4-

1   *4 (S.D. Cal. Mar. 7, 2007) (citing *Allison v. McGhan Med. Corp.*, 184 F.3d 1300,

2   1306 (11th Cir. 1999) (in turn citing *Daubert*, 509 U.S. at 592 n.10)).

3          The trial court acts as a "gatekeeper" and must make a "preliminary

4   assessment of whether the reasoning or methodology underlying the testimony is

5   scientifically valid and of whether that reasoning or methodology properly can be

6   applied to the facts in issue." *Elsayed Mukhtar v. Cal. State Univ. Hayward*, 299

7   F.3d 1053, 1063  (9th Cir. 2003), *amended by* 319 F.3d 1073 (9th Cir. 2003);

8   *Daubert*, 509 U.S. at 592-93.  In *Daubert*, the Supreme Court set forth a two-prong

9   test to determine the admissibility of expert testimony: (1) whether the expert's

10  reasoning or methodology is based on reliable principles (the reliability prong); and

11  (2) whether the reasoning or methodology can be properly applied to the facts in

12  issue (the relevancy prong).  *Daubert*, 509 U.S. at 592-93.

13         Under the first prong of *Daubert*, an expert's opinion must be sufficiently

14  reliable.  *Daubert*, 509 U.S. at 589 (discussing the requirements of Fed. R. Evid.

15  702).  Reliability analysis ensures that "an expert, whether basing testimony upon

16  professional studies or personal experience, employs in the courtroom the same

17  level of intellectual rigor that characterizes the practice of an expert in the relevant

18  field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  The Supreme

19  Court in *Daubert* articulated several factors that a court should consider when

20  evaluating reliability; however, the these factors are not exclusive and a district

21  court is given broad latitude in determining reliability.  *Kumho Tire*, 526 U.S. at

22  152-53; *Daubert*, 509 U.S. at 593-94.  The *Daubert* factors include: (1) whether the

23  expert's underlying theory or technique can be or has been tested; (2) whether the

24  theory or technique has been subjected to peer review and publication; (3) the

25  technique's known or potential rate of error and the existence and maintenance of

26  standards controlling the technique's operation; and (4) whether the theory or

27  technique has "general acceptance" in the relevant scientific community.  *Daubert*,

28  509 U.S. at 593-94.

-5-

1    The 2000 Advisory Committee Notes to Rule 702 identifies several

2    additional factors a court can consider in the wake of *Kumho Tire*.  These factors

3    include: (1) whether experts are "proposing to testify about matters growing

4    naturally and directly out of research they have conducted independent of the

5    litigation, or whether they have developed their opinions expressly for purposes of

6    testifying"; (2) whether the expert has "unjustifiably extrapolated from an accepted

7    premise to an unfounded conclusion"; (3) whether the expert has "adequately

8    accounted for obvious alternative explanations"; (4) whether the expert "is being as

9    careful as he would be in his regular professional work outside his paid litigation

10   consulting"; and (5) whether the "field of expertise claimed by the expert is known

11   to reach reliable results for the type of opinion the expert would give."  Fed. R.

12   Evid. 702 Advisory Committee's Notes (2000 amends.).

13   Under the second prong of *Daubert* the expert's testimony must be "relevant

14   to the task at hand, . . . i.e., that it logically advances a material aspect of the

15   proposing party's case."  *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315

16   (9th Cir. 1995) (*Daubert II*) (quoting *Daubert*, 509 U.S. at 597).  To satisfy the

17   relevancy requirement, the expert's opinion must help the trier of fact to reach a

18   conclusion necessary to the case.  *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230

19   (9th Cir. 1998).   Expert testimony is not relevant if it does not allow a reasonable

20   juror to conclude that a proposition is more likely to be true than false.  *Cf.*

21   *Daubert*, 509 U.S. at 591-93.

22   **IV.   ARGUMENT**

23       **A.   El Khoury's Opinions And Testimony Should Be Excluded As
24   Irrelevant Because the Evidence Will Not Help The Trier Of Fact
     Decide Any Of Ara's Counterclaims.**

25   El Khoury's opinions and testimony are irrelevant and will not assist the trier

26   of fact in reaching any necessary conclusions in this case.  El Khoury asserts that

27   pursuant to Lebanese law, Ara has no right to contest Plaintiff's U.S. registration

28   and subsequent use of the KAROUN Mark in the United States.  (Vaughn Decl. Ex.

-6-

1    I, El Khoury Exp. Rep. at 14.)  This testimony is irrelevant for determining the

2    remaining counterclaims in this case, which concern questions of U.S. law before  a

3    U.S. court.  (Vaughn Decl. Ex. J, Abirached Exp. Rep. at 7.)  Following the grant of

4    Ara's, and the denial of Plaintiff's motions for summary judgment (Doc. No. 223),

5    only Ara's Lanham Act counterclaims for false designation of origin, cancellation,

6    and accounting of damages survive.  The laws of the United States, not the laws of

7    Lebanon, apply to these counterclaims since the dispute arises from Plaintiff's

8    usage of the KAROUN Mark in the United States. (*Id.*)

9         As noted by Ara's expert, René Abirached ("Abirached") in his May 14,

10   2013 report, Lebanese law is only to be consulted in this case to "determine the first

11   holder of the rights on the trademark  and to ensure the validity of the agreements

12   entered into in Lebanon regarding the use of the trademark."  (Vaughn Decl. Ex. J,

13   Abirached Exp. Rep. at 3).  As discussed further in Part IV.C. below, El Khoury

14   incorrectly interprets and applies Lebanese law to erroneously conclude that Ara

15   and Anto inherited ownership of the Lebanese mark following the death of their

16   father Ohannes.  (Vaughn Decl. Ex. I, El Khoury Exp. Rep. at 8-9.)  Under the

17   correct application of Lebanese law, however, the brothers did not and could not

18   inherit the rights to the trademark because, at the time of Ohannes' death,

19   ownership belonged to the Company, Karoun Dairies S.A.L., and not Ohannes.

20   (Vaughn Decl. Ex. J, Abirached Exp. Rep. at 3-4).  Thus, El Khoury's opinion on

21   the application of Lebanese law to determine the progression of ownership of the

22   mark is unreliable and irrelevant.

23        Notwithstanding the first rights holder determination, the remaining issues in

24   this case concern actions occurring in the United States—Plaintiff's registration and

25   use of the KAROUN Mark in U.S. commerce.  Therefore, El Khoury's opinions

26   and testimony on Lebanese law that is inapplicable in this case will not assist the

27   trier of fact and should be excluded.

28   /////

-7-

1

**B.      El Khoury's Opinions And Testimony Should Be Excluded As Irrelevant Because They Are Impermissible Legal Conclusions.**

2

3          El Khoury's opinions constitute inadmissible legal conclusions and are

4    therefore excludable as irrelevant.  El Khoury states that "[u]nder the Lebanese law,

5    Karoun and Ara have no right to contest [Plaintiff's] registration even though the

6    Karoun trademark was similar to Ara's Karoun Dairies S.A.L. then lapsed

7    registered trade name in Lebanon." (Vaughn Decl. Ex. I, El Khoury Exp. Rep. at

8    14.)  In fact, it is for the trier of fact – not Lebanese law or El Khoury's personal

9    opinions about Lebanese law –  to determine who has the right to use of the

10   KAROUN Mark in the United States under United States law.  By presuming that

11   Lebanese law is determinative and purportedly applying that to selective (and

12   manufactured) facts of this case, El Khoury invades the role of this Court.  And by

13   offering opinions that invade the province of the Court (with his own, personal

14   opinions), El Khoury cannot possibly provide opinions that assist this Court in

15   deciding any necessary issues in this case.

16          As a general rule, "testimony in the form of an opinion or inference

17   otherwise admissible is not objectionable because it embraces an ultimate issue to

18   be decided by the trier of fact." Fed. R. Evid. 704(a).  However, it is black letter law

19   that an expert cannot give an opinion as to his *own* legal conclusion, which is the

20   "distinct and exclusive province" of the trier of fact.  *Hangarter v. Provident Life &*

21   *Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *United States v. Weitzenhoff*,

22   35 F.3d 1275, 1287 (9th Cir. 1993) ("Resolving doubtful questions of law is the

23   distinct and exclusive province of the trial judge."); *see also Smith v. Pac. Bell*, 649

24   F. Supp. 2d 1073 (E.D. Cal. 2009) (finding that expert testimony consisting of legal

25   conclusions held as inadmissible); *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523

26   F.3d 1051, 1059-60 (9th Cir. 2008) (noting that an expert cannot give an opinion as

27   to his or her legal conclusion); *Aguilar v. Int'l Longshoremen's Union*, 966 F.2d

28   443, 447 (9th Cir. 1992) (matters of law are for the court's determination).

-8-

1

2

**C.     El Khoury's Opinions Concerning the Application of International Laws Are Also Legally Erroneous and Thus Are Unreliable.**

3      El Khoury's legal conclusions not only invade the province of the Court, but

4  also constitute erroneous statements of law, which do not (and cannot) assist the

5  trier of fact.  *See Weitzenhoff*, 35 F.3d at 1287 (noting that it is an "impermissible

6  delegation of the district judge's duties" to allow an expert to instruct the jury on

7  contested issues of law); *see also Nationwide*, 523 F.3d at 1058 ("the district court

8  did not err in excluding [the expert's] legal conclusions, even if [the expert's]

9  statement of the law had been correct" because such testimony "would have been

10  not only superfluous but mischievous.")  Notably, El Khoury concludes that Ara

11  has no right to request cancellation of Plaintiff's KAROUN Mark in the United

12  States because his claims are barred by a purported territoriality principle governed

13  by Lebanese law.  (Vaughn Decl. Ex. I, El Khoury Exp. Rep. at 11.)  In reaching

14  this conclusion, El Khoury necessarily ignores relevant and binding United States

15  law, which explicitly states that the territoriality principle is not absolute.  (Doc.

16  No. 223, Order at 9:15-23); *see Grupo Gigante SA v. Dallo & Co.*, 391 F.3d 1088

17  (9th Cir. 2004) (stating that an absolute territoriality rule without a famous-mark

18  exception would promote consumer confusion and fraud).  Although trademark

19  rights in the United States generally depend on priority of use in the United States,

20  El Khoury disregards the relevant and controlling exception that "even those who

21  use marks in other countries can sometimes – when their marks are famous enough

22  – gain exclusive rights to the marks in the [United States]" *Grupo Gigante*, 391

23  F.3d at 1095.  This exception – not acknowledged by El Khoury - is applicable

24  even when the foreign user has not used the mark in the United States as long as the

25  foreign user can show that the mark has "acquired a secondary meaning and a

26  substantial percentage of consumers in the relevant market are familiar with the

27  foreign mark." *Id.* at 1094-95, 98.  Indeed, based on the four corners of his report in

28  this United States trademark case, El Khoury did not acknowledge or analyze any

-9-

1 United States statutes or case law – or even consider whether he should analyze

2 United States law.

3     El Khoury's opinions and testimony also erroneously apply international law.

4 El Khoury incorrectly concludes that the Paris Convention, to which Lebanon and

5 the United States are members, gives Ara no right to request cancellation of

6 Plaintiff's U.S.-registered KAROUN Mark.  (Vaughn Decl. Ex. I, El Khoury Exp.

7 Rep. at 12-14.)  In his application of the Paris Convention, El Khoury looks only to

8 Section 8, which provides limited protections for trade names.  However, his focus

9 on Section 8 is irrelevant because the "KAROUN" name is, at the same time, a

10 trade name and a trademark – which is covered by other sections of the Paris

11 Convention.  (Vaughn Decl. Ex. J, Abirached Exp. Rep. at 8 & n. 2.)  Specifically,

12 Article 6 Bis of the Paris Convention, which deals with trademarks, gives priority

13 to Ara's well-known Lebanese mark over Plaintiff's U.S. mark. Notably, El Khoury

14 fails to even mention in his report the provisions of Article 6 Bis of the Paris

15 Convention, which states:

16          (1) the countries of the Union undertake, ex officio if their
            legislation so permits, or at the request of an interested
17          party, to refuse or to cancel the registration, and to
            prohibit the use, of a trademark which constitutes a
18          reproduction, [or] an imitation… liable to create
            confusion, of a mark considered by the competent
19          authority of the country of registration or use to be well
            known in that country as being already the mark of a
20          person entitled to the benefits of this convention and used
            for identical or similar goods.
21

22 (Vaughn Decl. Ex. J, Abirached Exp. Rep. at 8 & n. 2.)

23     Because El Khoury's statements of law are both irrelevant and erroneous,

24 permitting his expert testimony would be "not only superfluous but mischievous."

25 *United States v. Brodie*, 858 F.2d 492, 496-97 (9th Cir.1988), *overruled on other*

26 *grounds by United States v. Morales*, 108 F.3d 1031, 1033 (9th Cir.1997) (en banc).

27 As such, El Khoury's testimony should be excluded because his testimony fails to

28 assist the trier of fact.

-10-

**D.**     **Even If Lebanese Law Is Determined To Be Relevant, El Khoury's Opinion And Testimony Should Be Excluded As Unreliable Because He Incorrectly Applies Lebanese Law To The Facts Of This Case.**

Even if Lebanese law is determined to be somehow relevant to the facts of this United States trademark case, El Khoury's application of Lebanese law is incorrect, thereby making his testimony unreliable. El Khoury opines that following the death of Ohannes, Ara and Anto inherited joint rights of ownership in the Lebanese mark. (Vaughn Decl. Ex. I, El Khoury Exp. Rep. at 8-9.)  However, under Lebanese law, Ohannes transferred his rights to Karoun Dairies S.A.L. in 1983, approximately five years prior to his death. (Vaughn Decl. Ex. J, Abirached Exp. Rep. at 3.)  El Khoury did not consider this dispositive fact. Because Karoun Dairies S.A.L. has made continuous use of the Lebanese mark since its inception and registered the mark in Lebanon, the rights to the mark belong to the Company and never passed to Ohannes' heirs. (*Id.*)

El Khoury develops two erroneous arguments in support of his statement that the KAROUN mark is jointly owned by Ara and Anto. (*Id.* at 4.)  In his first argument, El Khoury states that Ohannes continued to use the mark after the incorporation of Karoun Dairies S.A.L. in 1972, and until his death in 1989.  The problem with this first argument – which El Khoury did not consider – is that in 1972, Ohannes incorporated Karoun Dairies S.A.L. and transferred all equipment, machinery, and transportation means used for production of yogurt to the Company. (*Id.*)  As Abirached notes, it would be "illogical" that the Company acquired the *means* of yogurt production without having use of the mark to *identify* the product. (*Id.* (emphasis added.))  When the Company failed to renew the mark in 1983, the mark was no longer protected and fell into the public domain. (*Id.* at 5.) However, the Company (Karoun Dairies S.A.L.) maintained ownership by virtue of its continuous use of the mark in commerce through the present day. (*Id.*)  Thus when Ohannes passed away in 1989, there was no right to the mark for Anto and

-11-

1   Ara to inherit – as ownership rights to the mark have belonged to the Company

2   since at least 1983.  (*Id.*)

3          El Khoury's second explanation for the joint ownership of the mark relies on

4   the government-issued decree following the conclusion of the Lebanese Civil War.

5   (Vaughn Decl. Ex. I, El Khoury Exp. Rep. at 8. (citing Section 1 of Law No 50 of

6   May 23, 1991, *Official Gazette* 1991.))  The decree extended all legal, judicial, and

7   contractual time limits effective between April 1975 and May 23, 1991.  (*Id.*;

8   Vaughn Decl. Ex. J, Abirached Exp. Rep. at 5.)  El Khoury opines that the decree

9   extended the Lebanese mark's period of protection through 1991, and that because

10  it was not renewed, the ownership of the mark passed to them jointly.  (Vaughn

11  Decl. Ex. I, El Khoury Exp. Rep. at 8-9.)  However, this interpretation of the

12  Lebanese decree is erroneous as "jurisprudence and doctrine are unanimous in their

13  view that the extension provided for by the aforementioned decree does not apply to

14  the period of protection of the trademark."  (Vaughn Decl. Ex. J, Abirached Exp.

15  Rep. at 5-6 (citing MOGABGAB, MARKS OF COMMERCE AND INDUSTRY 106 (1st ed.

16  in Arabic; Beirut Court of Appeal, Judgment of Jan. 12, 1989, 147, Collection

17  Shams el Din 1995))).

18          In sum, El Khoury overlooks relevant facts and erroneously applies Lebanese

19  law.  Thus, El Khoury's testimony should be excluded as unreliable.

20      **E.      El Khoury's Opinions And Testimony Should Be Excluded As
                 Unreliable Because He Relies On Facts Not Substantiated By**
21               **Evidence.**

22          El Khoury's testimony is unreliable because his report relies on contested

23  facts, which render his testimony to be of little to no assistance to the jury.  *See*

24  *Bonner v. ISP Techs., Inc.*, 259 F.3d 924 (8th Cir. 2001); *see also Aviva Sports, Inc.*

25  *v. Fingerhut Direct Mktg, Inc.*, 829 F. Supp. 2d 802, 827 (D. Minn. 2011) (finding

26  expert's broad conclusions so unsupported that they offered no assistance to the

27  jury).  As stated by Abirached, El Khoury merely "makes assertions and fails to

28  report such evidence."  (Vaughn Decl. Ex. J, Abirached Exp. Rep. at 6.)

-12-

1    Specifically, El Khoury assumes that Anto and Ara entered into an alleged oral

2    agreement in 1990, and that through this alleged agreement Ara was to have the

3    right to use the Karoun name in Lebanon while Anto was to have the right to the

4    name anywhere in the world outside Lebanon for any business.  (Vaughn Decl. Ex.

5    I, El Khoury Exp. Rep. at 4.)  El Khoury does not even acknowledge that Ara

6    contends that there was a written agreement between the parties and the only "oral

7    agreement" that transpired was that Anto promised not to re-enter the dairy

8    business.  (Doc. No. 223, Order at 2:17-20.)

9         El Khoury's testimony is unreliable because he points to nothing in the

10   record to establish why he adopts Anto's unsubstantiated account of the alleged oral

11   agreement as true.  Where "the expert's analysis is unsupported by the record,

12   exclusion of that analysis is proper, as it can offer no assistance to the jury." *Cole*

13   *v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 865 (8th Cir.2010); *see also Murphy v.*

14   *FedEx Nat., Inc.*, 618 F.3d 893, 906 (8th Cir. 2010) (excluding expert's opinion that

15   relied on a necessary assumption lacking factual support).  Thus, El Khoury's

16   conclusion that Anto was at liberty to register and use the KAROUN name in the

17   United States is based on unsubstantiated assumptions and is therefore unreliable.

18   (Vaughn Decl. Ex. I, El Khoury Exp. Rep. at 14.)

19        In addition, El Khoury fails to offer an explanation for why he did not

20   consider the well-supported alternative possibility – that Anto lost his interest in the

21   dairy business in Lebanon and no agreement regarding territorial use was ever

22   made.  (Vaughn Decl. Ex. J, Abirached Exp. Rep.at 7); *see also Clausen v. M/V*

23   *New Carissa*, 339 F.3d 1049 (9th Cir. 2003) (citing *Cooper v. Smith & Nephew,*

24   *Inc.*, 259 F.3d 194, 202 (4th Cir. 2001)).  An expert must provide reasons for

25   rejecting alternative hypotheses and the elimination of those hypotheses must be

26   founded on more than "subjective beliefs or unsupported speculation." *Claar v.*

27   *Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir.1994).  El Khoury's opinions

28   inexplicably accept Plaintiff's manufactured allegations as true and ignore Ara's

-13-

1   allegations – despite the fact that this Court already found that Ara has established a

2   genuine dispute of material facts precluding summary judgment on each of Ara's

3   counterclaims.  (Doc. No. 223, Order at 11:2-3, 12:10-11, 12:16-21.)

4         El Khoury's reliance on facts unsupported by the record and his failure to

5   explain his reasons for ruling out alternative analysis renders his testimony

6   unreliable.  Accordingly, El Khoury's opinion and testimony should be excluded.

7        **F.**     **El Khoury's Opinions And Testimony Should Be Excluded As**
**Unreliable Because He Fails to Analyze the Facts Under**
8              **Lebanon's Statute of Frauds.**

9         Even if, as El Khoury suggests, the alleged oral agreement is governed by

10  Lebanese law, Lebanon's statute of frauds would apply, barring Anto's claim.

11  Because El Khoury fails to analyze this, his opinions are unreliable and should be

12  excluded.

13       Article 254 of the Lebanese Code of Civil Procedure is Lebanon's statute of

14  frauds relating to oral agreements.  (Request for Judicial Notice ("RJN") Ex. A at 1,

15  Article 254 of the Lebanese Code of Civil Procedure and sworn translation attached

16  thereto, & RJN Ex. A at 2, Declaration of Walid Nasser ("Nasser Decl.") ¶ 2.)

17  Article 254(1) provides that the existence of a contract cannot be proven by

18  testimony if the agreement purports to create rights or obligations, the value of

19  which exceeds L.L. 500,000 (approximately $334.00 U.S.D.), or if no specific

20  value of the rights or obligations is indicated.  (RJN Ex. A at 2; Nasser Decl. ¶ 3;

21  RJN Ex. B, Exchange Rate.)  Article 254(2) prohibits a witness from proving what

22  exceeds a written contract.  (RJN Ex. A at 1 - 2; Nasser Decl. ¶ 4.)

23       El Khoury fails to analyze the alleged oral agreement under Article 254,

24  which is fatal to Anto's purported claim.  First, the alleged oral agreement had to be

25  in writing because (1) Anto does not allege there was a value ascribed to the rights

26  and obligations; and (2) regardless, the KAROUN name and trademark is now, and

27  was in 1990, worth a considerable sum, certainly much more than $334.  Anto

28  himself boasts that he "built Karoun into a thriving, multi-million dollar

-14-

business….” (RJN Ex. C, Los Angeles County Compl. ¶ 12.)  Anto also admits that Karoun Dairies Lebanon was a “functioning, profitable business” at the time of the brothers’ parting of ways.  (*Id.*, Compl. ¶ 10; *see also id*. Compl. ¶ 3.)  Indeed, it was the KAROUN name and goodwill that gave value to Anto’s new business in California, valued between $50,000 - $100,000 back in 1991.  (RJN Ex. D, Anto’s 1996 Complaint ¶¶ 10-15.)

Second, El Khoury’s report states that there were purportedly two concurrent agreements – one oral, one written.  (Vaughn Decl. Ex. I, El Khoury Ex. Rep. at 4.)  The written agreement disposed of Anto’s interest in the family business and divided the real property located in Beirut.  (RJN Ex. C, Compl. ¶ 9.)  The alleged oral noncompete agreement clearly exceeds what was contained in the written agreement.  Thus, Article 254(2) also requires any such agreement to be in writing.

El Khoury fails to analyze Article 254(1) & (2) in his report.  Under the subsections, Anto’s alleged oral agreement is invalid and unenforceable.  El Khoury’s failure demonstrates his expert report is unreliable and is yet another reason why the Court should exclude his opinions and testimony.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court prohibit El Khoury from testifying at trial because his opinions on areas of Lebanese law are irrelevant, unreliable, and fail to assist the trier of fact.

Dated:  June 28, 2013                    DLA PIPER LLP (US)


                                         By */s/ Licia E. Vaughn*
                                            LICIA E. VAUGHN
                                            E-mail:  licia.vaughn@dlapiper.com
                                            Attorneys for Defendants

-15-