UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAROUN DAIRIES, INC., a California corporation,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>KARLACTI, INC., a Delaware corporation, et al.,<br><br>　　　　　　　　Defendants. | Case No.: 08cv1521 AJB (WVG)<br><br>ORDER GRANTING DEFENDANTS/COUNTERCLAIMANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[Doc. No. 314] |

　　　The matter comes before the Court on Defendants/Counterclaimants' motion for summary judgment on Plaintiff's Fifth Affirmative Defense (the "Oral Agreement Defense") and Inheritance Theory Defense. (Doc. No. 314.)  Defendants seek the Court's ruling as a matter of law that Plaintiff's Fifth Affirmative Defense is time barred and/or fails on the merits and Plaintiff's Inheritance Theory Defense has been waived for failing to raise in a timely matter and/or will cause undue prejudice if allowed at this stage of the proceedings.  The matter was taken under submission on July 2, 2014.  After due consideration of the Parties's briefs filed in support and opposition, the Court **GRANTS** the motion for summary judgment.

## I.   BACKGROUND [1]

### A.   Relevant Factual Background

This trademark infringement action arises from a family dispute over the right to use a trademark in the United States that was previously established in the family business in Lebanon. Plaintiff was first to use and register the mark in the United States and filed this infringement action against Defendants. Defendants filed a counterclaim alleging that Plaintiff is the infringer and requesting cancellation of Plaintiff's registered mark.

Plaintiff's founder, Anto Baghdassarian (hereinafter "Anto") and Defendant Ara Baghdassarian (hereinafter "Ara") are brothers. Anto and Ara both worked for many years in the family dairy business in Lebanon ("Karoun Lebanon"). Karoun Dairies is a trade name which has been used in the family business since 1931 and is registered in Lebanon. Karoun Lebanon was well known in the Middle East and exported its products as far as Paris and London.[2] (Doc. No. 37 at 10-11.) In approximately 1990, after the death of his father and due to civil unrest in Lebanon, Anto sold his interest in Karoun Lebanon to Ara, and moved to the United States. While Ara asserts that they entered into an agreement that Anto would not enter the dairy business, Anto disputes this. Additionally, Anto asserts that the two brothers entered into an Oral Agreement dictating that Ara would have the exclusive right to use the Karoun mark in Lebanon in connection with the operation of Karoun Lebanon and Anto would have the right to use the mark for any and all purposes in all other geographic areas. (Doc. No. 316 at 2.)

---

[1] Along with their motion for summary judgment, Defendants request this Court to take judicial notice of eight (8) exhibits filed in support. (Doc No. 314-3, at 2-3.) Exhibits A through F are public court records in the action between the Parties in Los Angeles. The Court takes judicial notice of Exhibits A through F. Specifically, the Court takes judicial notice of the existence of these public records, the Court does not take notice of the truth of the matters stated therein. The Court declines to take judicial notice of Exhibits G through H where the Court did not rely on them in adjudicating this motion.

[2] The factual allegations from pleadings referenced herein are not disputed.

Subsequently, Ara continued to manage Karoun Lebanon, which proceeded to expand its business. Karoun Lebanon participated in local and international exhibitions, and advertised in international directories and journals. (Doc. No. 37 at 11.) In 2004 or 2005, Karoun Lebanon had to temporarily suspend production in Lebanon during a military conflict; however, it continued to use the Karoun mark through its exclusive licensees Defendants Karoun Dairies, Inc., a Canadian corporation ("Karoun Canada"), and Karlacti, Inc., a Delaware corporation ("Karlacti").

Plaintiff is a corporation organized and existing under the laws of the State of California. Anto named his business after the family business in Lebanon and marketed his products to Middle Eastern emigrants in California and elsewhere in the United States. In 1993, Plaintiff registered the trademark "Karoun Dairies" and in 2003, it registered the mark "Karoun's California Cheese, a Whole Milk Cheese."

In June 2006, Ara's counsel filed a trademark application to register the Karoun mark in the United States on behalf of Karoun Lebanon. Plaintiff objected and demanded Ara withdraw the application. Ara refused and asserted that Karoun Lebanon intended to expand its business into the United States under the Karoun name and demanded that Plaintiff cease and desist using the name. Ara argued that Anto had sold his right to use the mark to Ara when he sold him his interest in the family business. In May 2007, Ara's trademark application was abandoned. (*See* Doc No. 27 at 4.)

### B.   Relevant Procedural Background

In August 2008, Plaintiff filed a complaint against Ara, Karlacti and Karoun Canada. (Doc. No. 1.) Plaintiff amended its Complaint twice in 2009. The operative complaint claimed trademark infringement under the Lanham Act and federal common law, false designation of origin and federal unfair competition, dilution, and unfair competition under California law. Defendants filed a counterclaim for false designation of origin and federal unfair competition under the Lanham Act, cancellation of trademark registrations, and accounting. (Doc. No. 37.) Plaintiff replied to the counterclaims by asserting nineteen (19) affirmative defenses. The Fifth Affirmative Defense is entitled

"Breach of Oral Agreement" in which Plaintiff alleges that current attempts by Ara and his corporate entities to challenge Anto's use of the Karoun mark in the United States are in breach of the Oral Agreement. (Doc. No. 89 at 8.)

In November 2010, Plaintiff sought leave to file a Third Amended Complaint ("TAC") seeking the Court's permission add Anto as a new party and to add a new claim for breach of the alleged Oral Agreement. (Doc. No. 38.) This Court denied that motion, finding Plaintiff could have stated the claim when the lawsuit was first initiated, lacked diligence, and failed to show good cause to allow amendment even under the liberal standard of Federal Rule of Civil Procedure 15. (Doc. No. 220 at 18-20.) Thereafter, Anto, in his individual capacity, filed an action in the Superior Court of California, County of Los Angeles asserting the breach of Oral Agreement claim against Ara. Ara removed to the district court for the Central District of California. In ruling on Ara's motion to dismiss, District Judge Stephen V. Wilson found the claim to be governed by California's statute of limitations rather than Lebanese law. Accordingly, Judge Wilson dismissed Anto's claim finding it to be time-barred. *Antranik Baghdassarian v. Ara Baghdassarian, et al.*, 11-cv-10285 SVW (Jcx) (Feb. 16, 2012) (Doc. No. 314-3, Ex. E). Anto appealed and the Ninth Circuit Court of Appeals[3] reversed Judge Wilson's ruling after finding the district court lacked jurisdiction where the Complaint did not state an amount in controversy. The Central District case has been remanded back to state court.[4] (*Id.* at Ex. F.)

As to the purported Inheritance Theory Defense, Plaintiff claims that Anto inherited a right to use the Karoun mark when Ohannes passed away in 1989. Plaintiff first alluded to this theory in its April 2011 Expert Report of Pierre El Khoury. This theory was also mentioned in Plaintiff's reply to Defendant's motion for summary judgment filed on June 10, 2011. (Doc. No. 203 at 7.) On March 13, 2014, the Court

---

[3] On September 3, 2013 this court stayed this case pending the Ninth Circuit decision in the interests of judicial economy. (Doc. No. 292.)

[4] The state court will be holding a hearing on Ara's demurrer on July 11, 2014.

held a status conference and Plaintiff expressed the intent to rely on the Inheritance Theory as a defense at trial.

On September 29, 2012, this Court granted Defendant's motion for summary judgment and denied Plaintiff's motion for summary judgment. (Doc. No. 223.) Accordingly, the only remaining issues to be determined are those raised by the counter-claims and the defenses to the counterclaims. On April 23, 2014, this Court held a case management conference where the Parties alerted the Court to issues suitable for summary judgment before proceeding to trial. The Court ordered briefing on: (1) whether the alleged Inheritance Theory defense has been waived as an affirmative defense and (2) whether the alleged Oral Agreement, if valid, is barred by the statute of limitations. (Doc. No. 311.) Defendants filed their motion on June 2, 2014. (Doc. No. 314.) Plaintiff has filed a response. (Doc. No. 316.)

## II.    LEGAL STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(e) (West 2006). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). In considering the motion, the court must examine all the evidence in the light most favorable to the non-moving party and "all justifiable inferences are to be drawn in his favor." *Id.* at 255, 267.

When the moving party does not bear the burden of proof, summary judgment is warranted by demonstration of an absence of facts to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986). Summary judgment must be granted if the party responding to the motion fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

## III. DISCUSSION

### A. Inheritance Theory Defense

Plaintiff's inheritance theory defense alleges that Anto inherited a right to use the Karoun trademark when Ara and Anto's father, Ohannes, passed away in 1989. Defendants seek dismissal of this defense arguing Plaintiff waived any defense based on Anto's alleged inherited right. To resolve this issue, the Court must determine (1) whether Plaintiff waived this Inheritance Theory Defense by failing to assert it in a timely manner and (2) if the Inheritance Theory Defense was timely, whether it would prejudice the Defendants if Plaintiff is allowed to proceed on this theory.

#### 1. <u>Untimeliness</u>

In responding to a pleading under Federal Rule 8(c) a party must state any affirmative defense in a timely manner or it is deemed waived. *In re Adbox, Inc.*, 488 F.3d 836, 841 (9th Cir. 2007). Here, Plaintiff's responsive pleading (Doc. No. 89) does not mention the Inheritance Theory nor was it pleaded as an affirmative defense to the counterclaims. However, the Ninth Circuit has liberalized Rule 8(c)'s pleading requirement to allow a party to assert a defense for the first time in a motion for summary judgment if the delay does not prejudice the other party. *Magana v. Com. of the N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997).

Plaintiff's motion for summary judgment, filed on May 16, 2011 (Doc. No. 163), did not raise the inheritance theory as a defense to the counterclaims. Instead, Plaintiff first alluded to the Inheritance Theory in the expert report of Pierre El Khoury, which was served on Defendants in April 2011. It was not until June 10, 2011, in Plaintiff's Reply in support of its motion for summary judgment, that Plaintiff first mentioned that Anto had inherited a right to use the Karoun mark. Moreover, it was not until the March 13, 2014 status conference when Plaintiff first indicated its intent to rely on this theory as an affirmative defense.

Plaintiff argues that they raised the Inheritance Theory Defense during the summary judgment stage in 2011, specifically in its reply in support of its motion,

therefore their right to raise the defense has not been waived. Plaintiff further argues that the issue is not which summary judgment document raises the defense as long as its assertion at the *summary judgment stage* does not prejudice the opposing party. *Paine v. City of Lompoc*, 2675 F.3d 975, 980 n.1 (9th Cir. 2001).

Though courts in this circuit follow the liberal approach and would allow parties to raise various affirmative defenses at any time up to and including trial so long as the other party was not prejudiced by the delay,[5] this Court finds Plaintiff's lack of diligence inexcusable. In the instant case, Plaintiff had replied to counterclaims by asserting nineteen other affirmative defenses (Doc. No. 89). Moreover, Plaintiff had sufficient time to raise the Inheritance Theory Defense at a much earlier stage as the event which purportedly gave rise to Anto's alleged inheritance right (Ohannes passing) occurred in 1989, more than two decades ago. In *Kaufman v. Unum Life Insurance Company of America*, the court explained:

> "We recognize that in some cases, the defense may only become apparent after discovery, and therefore we are not stating that there is a blanket rule that the defense may not be asserted after discovery has been conducted. Without delving into the merits, however, we note that Unum bases its statute of limitations defense on the basis of a letter that Kaufman sent to Unum, questioning Unum's decisions regarding his benefit calculations. We do not see how that letter, if it is properly the basis of a statute of limitations defense, could only be discovered four years after the suit was filed, two years after discovery began, and after the parties were prompted to file a pretrial order. We conclude, therefore, that Unum has waived its statute of limitations defense due to the prejudice Kaufman has suffered in having to confront the defense too late in the time line of the litigation."

---

[5] *See Panaro v. City of North Las Vegas*, 432 F.3d 949, 951 (9th Cir. 2006) (holding the District Court did not err in permitting defendants to raise a new defense of exhaustion of administrative remedies at the summary judgment stage because the affirmative defense was not available until the summary judgment stage); *Camarillo v. McCarthy,* 998 F.2d 638, 639 (9th Cir. 1993) ("In the absence of prejudice, an affirmative defense may be raised for the first time at summary judgment"); *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984) (finding employer's failure to raise the affirmative defense of the statue of limitations in response to the first pleading did not waive the right to use that defense in a motion for summary judgment).

834 F. Supp.2d 1186, 1193 (D. Nev. 2011). Like *Kaufman*, Plaintiff here had many opportunities to properly raise the inheritance defense. However, Plaintiff failed to do so and waited until the "11th hour" instead of the earliest possible moment to properly raise it. *See Venters v. City of Delphi*, 123 F.3d 956 (7th Cir. 1997) (refusing to consider the defense, regardless of its actual merits, because the defense was only brought in a reply memorandum to a motion for summary judgment).

Additionally, the Court finds that as a result of the delay, Defendants will likely suffer prejudice, further supporting the conclusion that Plaintiff should be precluded from asserting the Inheritance Theory Defense.

　　　　2.　　There Would Be Substantial Prejudice on Defendants

Courts in the Ninth Circuit find that despite the untimeliness of certain defenses, absent prejudice, there is no waiver. *See e.g., See, e.g., Paine v. City of Lompoc*, 265 F.3d 975, 981 n. 1 (9th Cir.2001) (finding no waiver where absolute immunity raised as affirmative defense for first time in motion for summary judgment and plaintiff did not argue he suffered prejudice due to delay in assertion of such defense); *Sharer v. Oregon*, 481 F.Supp.2d 1156, 1165 (D. Or. 2007) (finding no waiver where statute of limitations raised as affirmative defense for first time in motion for summary judgment and plaintiff made no showing of prejudice); *Scott v. Garcia*, 370 F. Supp.2d 1056, 1065 n.8 (S.D. Cal. 2005) (finding no waiver where statute of limitations raised as affirmative defense for first time in motion for summary judgment and plaintiff had been placed on notice of defense and had opportunity to conduct discovery); *Petteruti v. United States*, 2003 WL 22461990, *3 (N.D. Cal. 2003) (finding no waiver where statute of limitations raised as affirmative defense for first time in motion for summary judgment and plaintiff did not claim prejudice); *Chabot v. Washington Mutual Bank*, 369 B.R. 1, 14 (Bankr. D. Mont.2007) (finding no waiver where statute of limitations raised as affirmative defense for first time in motion for summary judgment and plaintiff failed to argue or show prejudice). Courts in this district have also held that absent prejudice, a court has

discretion to allow defendant to plead affirmative defense. *See Fleming v. Coverstone*, 2011 WL 902117, *6 (S.D. Cal. 2011).

"Prejudice must be tangible . . . mere delay is insufficient to demonstrate prejudice." *Ledo Financial Corp v. Summers*, 122 F.3d 825, 827 (9th Cir. 1997). In *Ledo*, the district court rejected Ledo's argument that the FDIC had waived its argument by failing to file a timely response. *Id.* The court concluded that the delay was inadvertent and non-prejudicial since FDIC was unaware that it had not filed an answer and consequently did so within two days of being informed. *Id.* The district court concluded that there was no tactical advantage gained by the late filing and Ledo failed to demonstrate how it had been prejudiced by the delay. *Id.*

The facts of this case are distinguishable from *Ledo* and to the contrary, lend themselves to a showing of prejudice. Unlike *Ledo* where the plaintiff was unaware that it had not filed an answer, here Plaintiff not only filed an answer but also never sought to amend its pleadings to raise the inheritance defense to the counterclaims. Although the inheritance theory was mentioned in Plaintiff's Reply in support of its Motion for Summary Judgment, it was never argued as an affirmative defense. Moreover, it was never raised in the pre-trial order. Despite the fact that the event which purportedly gave rise to Anto's alleged inheritance right occurred in 1989, more than two decades ago, Plaintiff failed to plead it as an affirmative defense in this action.

The case before the court is more in line with *Lopez v. G.A.T. Airline Ground Support, Inc.* 2010 WL 2839417 (S.D. Cal. 2010). The court in *Lopez* found that "defendants' general denial of liability under the FLSA in the Answer was insufficient to put plaintiffs on notice of the particular defense." *Id.* at *8. Plaintiffs in *Lopez* did not have notice of the defense until after the parties had already taken depositions and produced requested documents. Thus, *Lopez* found plaintiffs were prejudiced by their inability to conduct discovery on the issue. The circumstances in *Lopez* are similar to the instances in the current case.

Here, Plaintiff tries to argue that Defendants have been aware of the inheritance rights issue for three years, starting in April 2011 with the El Khoury Report and thus Defendants' argument that they would be prejudiced by their inability to conduct discovery is baseless. However, it is important to note that all of the times the inheritance defense was mentioned in this case came after the close of discovery on April 4, 2011. Defendants argue they had no opportunity to question Anto or other supposed heirs about this inheritance theory during deposition, or conduct written discovery. Further, Defendants claim that since this theory was not raised in the pleadings or discovery, they had no idea the inheritance theory would be asserted by Plaintiff as an affirmative defense. Indeed, it is not Defendants' responsibility to clarify Plaintiff's pleadings or to act on assumption that the defense will eventually be asserted properly. *See Swanson v. Van Otterloo*, 177 F.R.D. 645, 650-51 (N.D. Iowa 1998). It was not until March 13, 2014 at the status conference where Plaintiff first indicated its intention to argue the inheritance theory defense at trial. Thus, Defendants argue they have been prejudiced because they were unable to (1) move to strike the defense pursuant to Fed. R. Civ. P 12 (f); and (2) move for summary judgment on the merits of the defense at the time the parties filed their dispositive motions. Like *Lopez*, the Defendant here would be prejudiced by their inability to conduct discovery on the issue due to the untimeliness of the inheritance defense that could have been raised much earlier.

Although a court has discretion to allow an omitted counterclaim or defense at any time "when justice so requires" the sound exercise of this discretion usually involves the presence or absence of such factors as undue delay, bad faith, undue prejudice to opposing party or futility of amendment. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986). Given the facts and history of this case, it would be prejudicial to allow Plaintiff to assert this inheritance theory as an affirmative defense after discovery has been closed. Additionally, allowing this defense would present

issues and questions of law and fact that need further development.[6]  The scope and extent of that inheritance right would expand the matters of this litigation beyond what is currently known as trial approaches.  This would prejudice Defendants as it would require Defendants to respond to the inheritance defense without full discovery, research and motions practice.  For the reasons discussed above, the Court finds Plaintiff waived this Inheritance Theory Defense by failing to raise it in a timely manner that would cause substantial prejudice for Defendants at this late stage of the litigation.

**B.     Oral Agreement Defense**

To determine whether Plaintiff's Oral Agreement defense is precluded by the statute of limitations, the Court must resolve: (1) when, if ever, can affirmative defenses by time-barred by the applicable statute of limitations; (2) is the matter before the Court one of those situations; and (3) if the Court answers the first two inquiries in the positive, then does California's two-year limitations period or Lebanon's ten-year period apply?  The Court addresses each inquiry in turn.

      1.     <u>Affirmative Defenses May be Barred by Applicable Statutes of Limitations in Some Circumstances.</u>

 Plaintiff first argues that an affirmative defense cannot be barred by limitations.  (Doc. No. 316 at 11.)  Indeed, the general maxim is that a "statute of limitations should only be used as a shield, not a sword" and courts generally allow defendants to raise defenses that, if raised as claims, would be time-barred. *City of Saint Paul Alaska v. Evans*, 344 F.3d 1029, 1033 (9th Cir. 2003); *see also Styne v. Stevens*, 26 Cal. 4th 42 (2001).  However, the Ninth Circuit has carved out a limited fact-specific exception to this general rule. *Evans*, 344 F.3d at 1033.  A review of the *Evans* decision is helpful to begin the Court's analysis of the matter at hand.

---

[6] For example, Karoun Lebanon was the owner of the Karoun mark at the time of Ohannes' death. Thus, it is unclear how Anto could have inherited a right to the Karoun mark from Ohannes.

*Evans* involved "the latest round of a long-simmering legal feud" between Tanadgusix Corporation ("TDX"), a native corporation, and the City of St. Paul ("the City"). The two parties had previously engaged in various federal and state lawsuits over their respective rights to federal land on St. Paul. *Id.* at 1030-31  In 1988, the two entities reached a Settlement Agreement that governed their relationship. *Id.* at 1032. However, the City was unable to commercially capitalize on the land and in 1996 challenged the validity of the Settlement in a suit filed against the Secretary of Commerce (not TDX) in federal district court in the District of Columbia. The City's lawsuit was transferred to the federal court in Alaska and TDX added as a defendant. TDX had also previously initiated a lawsuit against the City and federal defendants. The two cases were consolidated and TDX's claims were dismissed without prejudice and re-styled as counterclaims in the suit filed by the City. *Id.* The district court found that the City's claims were barred by the six-year statute of limitations in Alaska for lawsuits filed by governmental entities. *Id.* at 1033. Four of the City's affirmative defenses were identical to its time-barred affirmative claims, however the district court ruled that the statute of limitations did not apply to the defenses. Ultimately the district court rejected the defenses on the merits. The City appealed.

In analyzing the threshold issue of whether the six-year limitations period barred the City from asserting its claims as affirmative defenses, the Court of Appeals acknowledged the general maxim that the statute of limitations should be used as a shield and not a sword. *Id.* The Court then went on to analyze three Supreme Court decisions and a Tenth Circuit case that illustrated this principle: *Bull v. United States*, 295 U.S. 247 (1935), and *United States v. Dalm*, 495 U.S. 592 (1990); *United States v. W. Pac. RR.*, 352 U.S. 59 (1956); and *Northern. Pac. Ry. Co., v. United States*, 277 F.2d 615 (10th Cir. 1960). *Id.* at 1034. Crucial to this Court's analysis is this statement made by the *Evans* Court:

> "A common thread running through these cases is the emphasis on the respective roles of the parties in the litigation as a whole.  It is important

that the party asserting the defense is not, simultaneously or in parallel litigation, seeking affirmative recovery on an identical claim. Thus, whether affirmative defenses are exempt from statute of limitations largely hinges on a realistic assessment of the parties' litigation posture."

*Id.* at 1035. The *Evans* Court further noted cases in sister circuits that have held statutes of limitations and laches bar declaratory judgment claims seeking to establish a defense in anticipation of an action to enforce a contract or regulation. *Id.* at 1035. "[A] plaintiff cannot engage in subterfuge to characterize a claim as a defense in order to avoid a temporal bar." *Id.* (citing *Mobil Oil Corp. v. Dep't of Energy*, 728 F.2d 1477, 1488 (Emer. Ct. App. 1983). Accordingly, the *Evans* Court found the City's affirmative defenses essentially claims and were likewise barred by the six year statute of limitations. *Id.* at 1036.

Courts that have analyzed the holding of *Evans* generally do so in the context of applying the general rule. However, a Northern District of California case is comparable to the matter before this Court. In *Board of Trustees of Leland Stanford Junior University v. Roche Molecular Systems*, Defendant Roche asserted three defenses that if brought as claims would have been time-barred in a patent infringement case: (1) Roche is an owner of the patents; (2) Roche is a licensee of the patents; and (3) Plaintiff lacked standing because it is not the exclusive owner of the patent. 2007 WL 608009 (N.D. Cal. 2007) Roche pleaded these as both counterclaims and affirmative defenses.

In analyzing the reasoning of *Evans* as applied to the facts before it, the district court noted that time-barred claims are raised as defenses most commonly in the context of equitable recoupment. The main reason being that defendants in such circumstances are not seeking affirmative recovery of an identical claim. *Id.* at 9 (citing *Evans*, 344 F.3d at 1035). "But where a defendant seeks more than adjudication of questions raised by way of defense, and instead seeks affirmative recovery via counterclaim, it 'abandons its right to seek solace in the status of a defendant.'" *Id.* (quoting *Evans*, 344 F.3d at 1046). In ruling that Roche's licensee defense fell under the general rule, the district

court noted that "Roche's claim as licensee seeks no affirmative recovery, but only to preserve the status quo, and is better viewed as an affirmative defense. As such, it is entitled to the traditional shield from a statute of limitations-based attack." *Id.* However, as to the other two defenses, patent ownership and Plaintiff's lack of standing, the district court stated that these claims sought to expand Roche's current rights, and are therefore properly viewed as counterclaims subject to the applicable statute of limitations. *Id.*

This analysis informs the Court in the instant matter. Contrary to Plaintiff's assertion, the Oral Agreement defense may indeed be barred by the applicable statute of limitations. Where a party attempts to disturb the status quo and seek to expand current rights using a defense, a court may properly view it as a claim masquerading as a defense and find it time barred. This analysis is fact specific and the Court must conduct a "realistic assessment of the parties' litigation posture." *Evans*, 344 F.3d at 1035.

  2. <u>The Alleged Oral Contract Defense is Subject to the Applicable Statute of Limitation</u>

Plaintiff argues that *Evans* is factually and procedurally distinguishable from the instant case. (Doc. No. 316 at 14.) Plaintiff states that its initial lawsuit merely sought to enforce its trademark rights and did not seek any relief based on the alleged Oral Agreement. It was not until Defendants filed their counterclaim and after Plaintiff's failed motion to dismiss the counterclaim that Karoun filed their answer asserting the Oral Agreement defense. Karoun's attempt to bring the breach of oral agreement claim was ultimately denied as untimely. Therefore, Plaintiff argues that the affirmative defense is not duplicative of a previously filed but time-barred complaint. (*Id.*) Though the facts of this case are not identical to those in *Evans*, its rationale is still applicable.

An important factor the *Evans* Court considered in finding the City's defenses were time-barred was the fact that the City was the initial aggressor. *Evans*, 344 F.3d at 1035 ("The City initiated the lawsuit and there is no question that the City 'disturbed the equilibrium between the parties' by first challenging the validity of the Agreement in

court." (internal citation omitted)).  Likewise, Plaintiff here cannot escape the conclusion that it was the initial aggressor and "disturbed the equilibrium between the parties." *Id.* Indeed, it was in 2010, two years after the initial filing of the trademark infringement suit, that Plaintiff attempted to add Anto as a party and assert the breach of oral contract claim.  Moreover, when Plaintiff was unsuccessful in asserting the breach of oral contract claim in the instant litigation, Anto sought to file it in state court in the County of Los Angeles. (Doc. No. 314-3, Ex. A.)  *Evans* emphasized that in cases where the general rule applied, the party asserting the defense was not "simultaneously or in parallel litigation, seeking affirmative recovery" on the identical claim.  Here, Plaintiff seeks to do just that.  Plaintiff attempted to do so before this Court and did so in another court.

Additionally, the current use of the alleged Oral Agreement is essentially an attempt to revive the same claims but by pleading them as defenses.  It is illogical to say that Plaintiff can revive his stale claims, which asserts the same rights, by filing them as affirmative defenses.  Much like Roche's patent ownership and standing defenses, Plaintiff's use of the alleged Oral Agreement asks this Court to determine, on the merits, that the Oral Agreement exists and that Ara breached the oral contract, thereby expanding the scope of Plaintiff's current rights.  This Court's conclusion turns on this point. By asserting this defense, Plaintiff seeks more than mere adjudication of questions raised by way of defense, and instead seeks what amounts to a declaration of Plaintiff's rights under the alleged Oral Agreement.  Asserting this affirmative defense necessarily would be asserting rights beyond Plaintiff's current rights, i.e. that Anto and therefore Karoun has the right to use the Karoun mark in all geographic areas outside Lebanon.  Therefore it is properly viewed as a claim subject to the applicable statute of limitation.

Accordingly, this Court finds the Oral Agreement defense is an effort for affirmative relief in which Plaintiff seeks to have the Court find a valid Oral Agreement existed and that Defendant breached it.  No matter what gloss Plaintiff puts on its defense, it is

simply a time-barred claim masquerading as a defense and is likewise subject to the statute of limitations bar, if California law applies.

       3.    <u>California's Statute of Limitations is Applicable to the Oral Agreement Defense</u>

Plaintiff contends that Lebanese law controls and this Court should not place any reliance on Judge Wilson's decision, when he found California law applicable after conducting California's "governmental interest analysis" to determine choice of law. Plaintiff argues the facts before Judge Wilson and this Court are different and that Judge Wilson erred by not abiding by California Civil Code § 1646 which requires a contract to be interpreted according to the law and usage of the place where it is made, i.e. Lebanon.

As an initial matter, the differences cited by Plaintiff are not so disparate that they render the case before this Court and the case before Judge Wilson so incomparable that we must ignore Judge Wilson's analysis. Though the party at issue is Karoun in this case, the basis of the corporation's defense is the alleged Oral Agreement made by Anto. Though Karoun is attempting to assert the Oral Agreement as a defense and not an affirmative claim, the Court has already disposed of this issue in the analysis of the applicability of the statute of limitations to affirmative defenses above. A review of Judge Wilson's opinion reveals that he indeed did consider Civil Code § 1646, but determined where applying the law of a foreign state would conflict with California law, California uses a "governmental interest" approach to determine which body of law governs. This Court agrees with Judge Wilson's ultimate conclusion, though it arrives at that result through a different approach.

Generally, California law dictates that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate place of performance, according to the law and usage of the place where it was made." Cal. Civ. Code § 1646. Plaintiff would have the Court end its analysis here and find that under Civil Code § 1646, this Court must apply the Lebanese ten-year statute of limita-

tions as the Oral Agreement was made in Lebanon. (Doc. No. 316 at 17.) However, this is not the end of the Court's inquiry.

*Frontier Oil Corp. v. RLI Ins. Co.* is informative on this matter. 153 Cal. App. 4th 1436 (2007). In that case, the court conducted an extensive and persuasive analysis of choice of law issues in the context of California Civil Code § 1646 and the "governmental interest analysis." *Id.* at 1451-61. The court concluded that the "governmental interest analysis" did not supplant Civil Code § 1646 *as the law governing the interpretation of contracts*. The court found that though Civil Code § 1646 determines which law to apply when *interpreting the contract*, the "governmental interest analysis" would apply to "other choice-of-law issues.' *Id.* at 1459 ("Instead, we hold that the choice-of-law rule in Civil Code section 1646 determines the law governing the interpretation of a contract, notwithstanding the application of the governmental interest analysis to other choice-of-law issues."). Moreover, in listing what these "other choice-of-law issues" were, the Court expressly listed: (1) *statute of limitations*; (2) validity and enforcement of a contract; (3) statute of frauds; and (4) parol evidence rule. *Id.* at 1453-54. Indeed, the court was critical of these cases that have cited § 1646 to support conclusions on choice-of-law issues other than the law governing contract interpretation. These cases did not explain "why a statute that by its express terms establishes a choice-of-law rule only as to the interpretation of a contract should determine other choice of law issues." *Id.* at 1454. Accordingly, this Court does not rely on § 1646 to rule on the matter of the applicable statute of limitation. Instead, we must conduct the "governmental interest analysis" just as Judge Wilson did.

The governmental interest analysis involves a three step inquiry. First, the court determines whether the applicable rules of law of the potentially concerned jurisdictions are the same or different. If the applicable rules of law are materially different, the court proceeds to the second step. This involves an examination of the interests of each jurisdiction in having its own law applied to the particular dispute. If each jurisdiction has an interest in applying its own law to the issue, there is a "true conflict" and the court

proceeds to the third step.  The third step is called the "comparative impairment analysis," in which the court determines which jurisdiction has a great interest in the application of its own law to the issue, or, conversely, which jurisdiction's interest would be more significantly impaired if its law were not applied. *Id.* at 1454-55 (internal citations omitted).

Under California law, the burden is on the proponent of a foreign law to show that the foreign jurisdiction's interest in having its law apply is greater than California's interest in the application of its laws.  The Court concurs with Judge Wilson in finding that a conflict of law clearly exists.  California law mandates a two-year statute of limitations applicable to oral contracts.  Cal. Civ. Code § 339.  Lebanese law provides for a more liberal statute of limitations as the ten-year limitations period does not begin to run until the alleged breach ceases.  The interest of the respective states must be considered.

The Court also agrees with Judge Wilson's finding that California's interest in applying its own law to the instant case is strong.  Where the conflict concerns a statute of limitations, the governmental interest approach generally leads California courts to apply California law. *Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003) (internal citations omitted).  Moreover, "California's interest in applying its own law is strongest when its statute of limitations is shorter than that of the foreign state, because a state has a substantial interest in preventing the prosecution in its courts of claims which it deems to be stale." *Id.* (internal quotation marks and citations omitted).

Plaintiff argues that Lebanon's interest is materially stronger. (Doc. No. 316 at 19.)  However, only an "extraordinarily strong interest of a foreign state in keeping these claims alive could overcome the presumption that California will not hear claims that have been stale for so long under its own law" *Id.* at 717.  Both Parties to the alleged Oral Agreement, Anto and Ara, reside in the United States.  While, Lebanon may have an interest in regulating Karoun Lebanon the corporation, the issue of the enforcement of the agreement in Lebanon is not being contested.  Indeed, there is no allegation that

Plaintiff is attempting to use the Karoun mark in Lebanon. Accordingly, this Court finds that Plaintiff has failed to meet his burden of showing Lebanon has a greater interest in applying its laws. California's two-year statute of limitation is the appropriate period to this case.

    4.    <u>Plaintiff's Oral Agreement Affirmative Defense is Time Barred.</u>

Based on the analysis above, this Court finds that Plaintiff's Oral Agreement defense is time-barred. This affirmative defense is merely a claim masquerading as a defense. California's two-year statute of limitations is applicable. Based on California's statute of limitations, the claim expired in December 2008.[7] Accordingly, the affirmative defense is likewise time-barred.

Defendant also pose three independent grounds to find the alleged Oral Agreement unenforceable: (1) it violates California's law and public policy against restraint of trade; (2) it lacks sufficient consideration; and (3) it violates Lebanon's statue of fraud. These three grounds are currently before the Los Angeles superior court which will be hearing arguments on Defendant's demurrer on July 11, 2014. The Court has already found the alleged Oral Agreement defense to be time-barred, as such it is unnecessary for the Court to consider these independent reasons.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants/Counterclaimants' motion for summary judgment in its entirety, finding for Defendants/Counterclaimants' on the "Oral Agreement Defense" and the "Inheritance Theory Defense" as described herein.

As noted above, this Court stayed this case pending the Ninth Circuit decision concerning the related case filed in Los Angeles Superior Court and transferred to the Central District of California (Doc. No. 292), and later lifted the stay to allow the filing

---

[7] Plaintiff became aware of the alleged breach of Oral Agreement in 2006 when Defendant's counsel notified him that Defendant intended to apply for the Karoun mark. Plaintiff attempted to add the breach of oral contract claim in 2010.

1  of the current motion. (Doc. No. 311.)  Having completely disposed of the oral contract
2  and inheritance defenses, the Court finds the stay no longer necessary and herewith
3  vacates the stay.  This matter is sufficiently narrowed to proceed to trial. Therefore, the
4  Court sets a Case Management Conference for August 1, 2014 at 3:00 P.M. in Court-
5  room 3B, to discuss setting further proceedings for the case.

8  DATED:  July 8, 2014

                                                        _____
                                                        Hon. Anthony J. Battaglia
                                                        U.S. District Judge